**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NANCY ELLITHY and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HEALTHCARE TRAINING INSTITUTE, INC., a New Jersey for-profit corporation, BASHIR MOHAMMAD, M.D., JOY CROWLEY and JOHN DOE 1 THROUGH X (X being a number as yet unknown, being fictitious persons or corporations whose identities are presently unknown),**<br>*Defendants.* | Civil Action No. 2:12-cv-06209-CCC-JAD<br><br>Hon. Claire C. Cecchi<br><br>CIVIL ACTION<br><br>RETURN DATE: December 3, 2012 |

# DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS

GACCIONE POMACO P.C.
524 Union Avenue
P.O. Box 96
Belleville, New Jersey 07109
Telephone: (973) 759-2807
Facsimile: (973) 759-6968
Attorneys for Defendants
Healthcare Training Institute, Inc.,
Bashir Mohammad, M.D., and Joy Crowley

Joseph A. DeFuria, Esq.
Peter W. Homer, Esq.

Of Counsel and On the Brief

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES . . . . . . . . . . ii

SUMMARY . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

I. The CFA Does not Apply to Plaintiff's Purchase of Career Education Training . . . . . . . . . . 1

a. Plaintiff Distorts the Legislature's Intended Reach of the CFA . . . . . . . . . . 1

b. The School did not Offer Training "to the Public at Large" . . . . . . . . . . 2

c. The School's Career Education Training is not Similar to any Transaction Expressly Subject to the CFA . . . . . . . . . . 3

d. *MacDonald* Supports Dismissal of this Action . . . . . . . . . . 3

e. Plaintiff's Alleged Lack of Sophistication is Irrelevant to the Court's Analysis of Plaintiff's Putative CFA Claim . . . . . . . . . . 5

II. The Learned Professional Exemption Applies to the School . . . . . . . . . . 5

III. Plaintiff's Purported Fraud-Based Claims Fail to Meet the Heightened Specifically Required by Rule 9(b) . . . . . . . . . . 6

IV. Plaintiff's Purported Claims for Breach of Contract and Unjust Enrichment Must be Dismissed in Their Entirety . . . . . . . . . . 7

a. Plaintiff's Putative Unjust Enrichment Claim Must be Dismissed . . . . . . . . . . 7

b. Plaintiff's Putative Breach of Contract Claim Must Be Dismissed . . . . . . . . . . 8

c. The Claims Against the Individual Defendants Must be Dismissed . . . . . . . . . . 9

V. Plaintiff's Request for Attorneys' Fees and Injunctive Relief Is Improper . . . . . . . . . . 9

VI. Sanctions are not Warranted or Justified Against the School . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

Cases

*BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super 271, 280 (Law Div. 1990) . . . . . . . . . . 3

*Cetel v. Kirwin Financial Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006 . . . . . . . . . . . . . . . . . . 2

*East Coast Office Systems v. Citicorp Vendor Finance, Inc.*, Civ. No. 06-25 (GEB), 2006 WL 3257091, at *3 (D.N.J. Nov. 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gourdine v. Felician College*, 2006 WL 2346278 (N.J. App. Div. 2006) . . . . . . . . . . . . . . . . . 6

*In re Advanta Corp. Sec. Litig.*, 180 F.3d. 525, 534 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 6

*Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719, 726 (D.N.J. 2008) . . . . . . . . . . . . . . . . 3

*Kugler v. Romain*, 58 N.J. 522, 536 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255 (1997) . . . . . . . . . . . . . . 12

*MacDonald v. Thomas M. Cooley Law School*, __ F.Supp. 2d __, No. 1:11-CV-831, 2012 WL 2994107 (W.D. Mich. July 20, 2012) . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Macedo v. Dello Russo*, 178 N.J. 340, 435-436 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morris County Cardiology Consultants, PA v. Nw. Mut. Life Inc. Co.*, No. CIV.A.08-00308SRC, 2009 WL 3068260 (D.N.J. Sept. 21, 2009) . . . . . . . . . . . . . . . . . . . . . . 11

*Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pollizzi Meats, Inc. v. Aetna & Ins. Co.*, 931 F.Supp. 328, 340 (D.N.J. 1996) . . . . . . . . . . . . . . 12

*Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, CIV. A. 07-1342 HAA, 2008 WL 482327 (D.N.J. Feb. 19, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schlossman's Inc. v. Redcliff,* 70 A.2d 493, 495 (N.J. 1953) . . . . . . . . . . 9

*Smajlaj v. Campbell Soup Co.,* 782 F.Supp.2d 84 (D.N.J. 2011) . . . . . . . . . . 7

*Suarez v. Eastern Int'l College,* 428 N.J. Super. 10 (App. Div. 2012) . . . . . . . . . . 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) . . . . . . . . . . 11

*VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519, 526 (N.J. 1994) . . . . . . . . . . 8

*Watiti v. Walden University,* 2008 WL 2280932 (D.N.J. 2008) . . . . . . . . . . 6, 12

*Western Casualty & Surety Co. v. Southwestern Bell Tel. Co.,* 396 F.2d 351, 356 (8th Cir. 1968) . . . . . . . . . . 10

*Winer Family Trust v. Queen,* 503 F.3d 319, 327 (3d. Cir. 2007) . . . . . . . . . . 11

Statutes and Rules

Rule 9, Fed.R.Civ.P . . . . . . . . . . 6, 10

Rule 11, Fed.R.Civ.P . . . . . . . . . . 10

Rule 3.3, New Jersey Rules of Professional Conduct . . . . . . . . . .

## SUMMARY

Defendants Healthcare Training Institute, Inc. ("HTI"), Bashir Mohammed, M.D., and Joy Crowley (collectively, the "School") submit this reply in further support of their Motion to Dismiss [D.E. 4] the Complaint filed by Plaintiff Nancy Ellithy ("Plaintiff"). Plaintiff's Response [D.E. 12] offers no meaningful basis to avoid dismissal. This is because the New Jersey Consumer Fraud Act ("CFA") does not apply to Plaintiff's purchase of career education training and, even if it did, such a claim is barred by the "learned professional" exemption. The Complaint also fails to meet basic federal pleading standards and, notwithstanding these deficiencies, fails to state a cause of action for breach of contract and unjust enrichment or set forth any entitlement to injunctive relief and attorney's fees. For the reasons herein, and those in the Motion to Dismiss, Plaintiff's Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

### I. The CFA Does not Apply to Plaintiff's Purchase of Career Education Training

#### *a. Plaintiff Distorts the Legislature's Intended Reach of the CFA*

Plaintiff's purchase of career education training is not a "consumer transaction" subject to the CFA. In her Response, Plaintiff tries to expand the reach of the CFA by distorting applicable case law. For example, Plaintiff cites *Kugler v. Romain*, 58 N.J. 522, 536 (1971), for the supposed proposition that, in enacting the CFA, the New Jersey legislature "recognized that the deception, misrepresentation and unconscionable practices engaged in by professional sellers ... frequently produce an adverse affect on large segments of disadvantaged and poorly educated people..." However, in arguing that the CFA applies to "professional sellers," Plaintiff conveniently omits the critical portion of the citation observing that the New Jersey legislature recognized that the CFA's reach was intended to be limited to "professional sellers <u>seeking mass</u>

{00328394}

distribution of many types of consumer products." *See Kugler*, 58 N.J. at 536 (emphasis added). By omitting this, Plaintiff hides what a plain reading of the CFA makes obvious--the CFA was not intended to cover the School, which is not a "mass distributor" of a "consumer good," and was not intended to cover the purchase of career education training.

*b. The School did not Offer Training "to the Public at Large"*

Plaintiff also touts alleged facts in her Response (not alleged in her Complaint) that are irrelevant to this Court's analysis as to whether the CFA applies (which it does not). Specifically, Plaintiff claims that career education training is subject to the CFA because there are between 30,000 to 40,000 Bachelor degrees awarded in New Jersey in each of the past five years. This statistic does not speak to the limited segment of individuals interested in enrolling in the School's specialized post-secondary career training programs, and ignores the self-evident fact that the School cannot engage in the type of "mass distribution" contemplated by the New Jersey legislature and enroll an unlimited number of students. Nevertheless, the number of individuals who could possibly enroll in the School does not determine whether the CFA applies. Rather, the question is whether School's career education training is being offered for sale to the "public at large,"[1] and the Court is to look at the status of the parties and the nature of the transaction itself.[2] Under this analytical framework, the limited segment of individuals (as compared to the public at large) who are offered or even interested in the School's career education training renders the CFA inapplicable.

---

[1] *See Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) ("the CFA seeks to protect consumers who purchase goods or services generally sold to the public at large ... the entire thrust of the Act is pointed to products and services sold to consumers in the popular sense.") (emphasis added and internal quotations and citations omitted).

[2] *See id.* ("[T]he CFA is not intended to cover every transaction ... its applicability is limited to consumer transactions which are defined by both the status of the parties and the nature of the transaction itself.") (emphasis added and internal quotations omitted).

### c. *The School's Career Education Training is not Similar to any Transaction Expressly Subject to the CFA*

The sale of career education training is not expressly governed by the CFA. Plaintiff nevertheless argues that the CFA must apply to the School because the statute has been applied to other transactions that are not expressly prohibited. Plaintiff's argument is misguided. There is no dispute that the CFA has been extended to some transactions that are not expressly prohibited under the statute. This Court's analysis, however, does not end there. This is because the CFA "can be construed under the doctrine of *ejusdem generis* as a comprehensive definition intended to incorporate other products or services similar in nature to those enumerated [by the Division of Consumer Affairs]." *See BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271, 280 (Law Div. 1990) (emphasis added). Here, there are no enumerated transactions under the CFA or its related regulations that bear any similarity whatsoever to the purchase of career education training, and Plaintiff failed to identify one in her Response. This is an additional reason the CFA does not apply to the instant transaction.

### d. *MacDonald Supports Dismissal of this Action*

Plaintiff also fails in her Response to meaningfully distinguish *MacDonald v. Thomas M. Cooley Law School*, __ F.Supp. 2d. __, No. 1:11-CV-831, 2012 WL 2994107 (W.D. Mich. July 20, 2012). *MacDonald* holds that the purchase of a legal education is not a "consumer transaction" subject to Michigan's version of the CFA,[3] and should guide this Court's decision concerning the application of the CFA to analogous career education training. To avoid this, Plaintiff argues that *MacDonald* is distinguishable because the law school at issue was regulated by American Bar Association ("ABA") accreditation. This distinction is meaningless because

---

[3] As recognized by this District, the Michigan Consumer Protection Act is broader in scope than the CFA because it extends to acts and practices "in the conduct of trade or commerce." *See, e.g., Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719, 726 (D.N.J. 2008).

the *MacDonald* court did not even consider whether the law school was accredited in its finding that legal education was not a "consumer transaction."[4] Moreover, because in the instant dispute the School is subject to several layers of regulation, including by its institutional accreditor the Accrediting Commission of Career Schools and Colleges ("ACCSC"), Plaintiff's distinction actually supports that the School is not subject to the CFA.

Plaintiff then nonsensically claims that *MacDonald* is distinguishable because it concerned "ideal employment." However, nowhere in *MacDonald* does the term "ideal employment" appear, and the *MacDonald* court did not find that the law graduates' ideal employment was relevant in any respect to its determination whether the MCPA was applicable to the purchase of a legal education. In fact, rather than focusing on the subjective desires of the graduates, the *MacDonald* court determined that the objective purpose in acquiring legal education was to obtain employment as lawyers, which the *MacDonald* court reasoned was for a primarily business purpose and not a consumer transaction.[5] And, even if *MacDonald* based its decision on "ideal employment" (which it did not), this has no application here because, under New Jersey law, the Court must focus on the character of the transaction (i.e. career education training) and not on Plaintiff's subjective desires.[6] Plaintiff enrolled in HTI to advance her

---

[4] Indeed, nowhere in *MacDonald* is it even discussed that the ABA is the accrediting body for the law school. What is more, Plaintiff's citation to a website as supposed evidence that the law school is accredited by the ABA is outside of the four corners of the Complaint, should not be considered by the Court, and is the kind of evidence that Plaintiff falsely and improperly tries to sanction the School for citing.

[5] *Id.*, at *5 ("Plaintiffs did not purchase a Cooley legal education so that they could leisurely read and understand Supreme Court Reports ...Plaintiffs 'intended' their legal employment to subsequently better their personal circumstances, these better "personal circumstances" would be attained through their work as lawyers, i.e. a business.").

[6] *See, e.g., East Coast Office Systems v. Citicorp Vendor Finance, Inc.*, Civ. No. 06-25 (GEB), 2006 WL 3257091, at *3 (D.N.J. Nov. 9, 2006) ("Courts have held that it is the character of the

professional ambitions in the health care field—an indisputable business purpose. *See* Complaint, ¶ 20. Plaintiff's enrollment is therefore not a "consumer transaction" under the CFA.

***e. Plaintiff's Alleged Lack of Sophistication is Irrelevant to the Court's Analysis of Plaintiff's Putative CFA Claim***

Plaintiff also tries to avoid dismissal by claiming that she is an "unsophisticated buyer[]" "and is not [an] experienced commercial entit[y]" that engaged "in negotiated contracts with HTI." Plaintiff then claims that her allegations supposedly "raise the reasonable expectation that Plaintiffs will be able to reveal evidence of the necessary elements of a CFA violation in discovery." These types of allegations, which were rejected in *MacDonald*,[7] are irrelevant because they do not speak to the character of the transaction at issue, and do not present any meaningful basis to allow an otherwise improper CFA claim to proceed against the School.

## II. The Learned Professional Exemption Applies to the School

The conduct of learned professionals lies beyond the reach of the CFA so long as the learned professionals are operating in their professional capacities. *Macedo v. Dello Russo*, 178 N.J. 340, 435-436 (2004). Here, even if Plaintiff's purchase of career education training is subject to the CFA (which it is not), Plaintiff's putative CFA claim is nevertheless barred by the "learned professional" exemption. Plaintiff argues that this exemption does not apply because: (1) the School does not allege that it is regulated in way that creates a "patent" and "sharp" conflict with the CFA and (2) the School is not regulated by the Higher Education Commission ("HEC") of New Jersey. However, Plaintiff offers no authority (because there is none) that the

---

transaction rather than the identity of the purchaser which determines if the CFA is applicable.") (internal quotations and citations omitted).

[7] The *MacDonald* court rejected the law graduates' putative claims despite allegations that "Cooley is primarily marketing its product to naive, relatively unsophisticated consumers—many of whom are barely removed from college—who are often making their first 'big-ticket' purchase." 2012 WL 2994107, at *3.

{00328394}

School must be regulated by the HEC to fall within the learned professional exemption. What matters instead is that the School is governed by a regulation scheme that displaces the CFA.[8] Here, the School is regulated by its institutional accreditor ACCSC, and is even subject to an additional layer of state regulation by the New Jersey Department of Education and the New Jersey Department of Labor and Workforce Development. It is for this reason that the learned professional exemption applies here and requires dismissal of Plaintiff's putative CFA claim.

### III. Plaintiff's Purported Fraud-Based Claims Fail to Meet the Heightened Specificity Required by Rule 9(b)

Plaintiff's putative fraud-based claims fail to meet the heightened specificity required by Rule 9(b), Fed.R.Civ.P., and Plaintiff's Response does nothing to save them. Indeed, Plaintiff still fails to provide specific and materials details—the "who, what, when, where, and how"—for each alleged fraudulent statement at issue.[9] Moreover, Plaintiff continues to improperly make lumped-up allegations against all "defendants" collectively and continues to allege that "defendants" collectively made misrepresentations. *See* Complaint, at ¶¶ 46, 47, 58, 59.[10] This is insufficient, particularly when the Complaint does not define the term "defendants," and when the Complaint is filed against multiple defendants, including: 1) a company with several

8 *See Macedo*, 178 N.J.at 346 ("advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA but subject to comprehensive regulation by the relevant regulatory bodies and to any common-law remedies that otherwise may apply"); *see also Watiti v. Walden University*, 2008 WL 2280932 (D.N.J. 2008): *Gourdine v. Felician College*, 2006 WL 2346278 (N.J. App. Div.. 2006).

9 *See, e.g., In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (Rule 9(b) "requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story").

10 Plaintiff argues in her Response that ¶¶ 58 and 59 of her Complaint alleges that "HTI's agents" made certain misrepresentations. Response, p. 16. However, these paragraphs state that "defendants"—in the collective—made certain misstatements. Even assuming *arguendo* that the Complaint used the phrase "HTI's agents" (and it does not), the School is entitled to know which specific agents made each particular alleged misrepresentation.

employees; 2) two individuals; and 3) an indefinite number of John Does. The School is entitled to know who Plaintiff asserts these allegations against, and Plaintiff's Complaint fails to do this.

Plaintiff then relies on *Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84 (D.N.J. 2011), and *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004), for the proposition that Plaintiff supposedly does not need to provide further specificity in connection with her CFA claim because the New Jersey Supreme Court recognizes the "benefit of the bargain" theory. However, *Smajlaj* and *Furst* do not support this theory and only discuss the benefit-of-the-bargain theory in connection with the requirement to plead damages under the CFA. *Smajlaj*, 782 F.Supp.2d at 99; *Furst*, 182 N.J. at 11-14. And, even in *Smajlaj*, the court specifically noted that Rule 9(b) applies to CFA claims based on an alleged misrepresentation or omission (as is the case here). 782 F.Supp.2d at 98. Neither case obviates Plaintiff's obligation to plead her purported CFA claim with the requisite specificity under Rule 9(b) and provide specific information regarding each of the alleged misstatements at issue. However, as currently pled, the Complaint does neither, and Plaintiff's fraud-based claims must be dismissed.

## IV. Plaintiff's Purported Claims for Breach of Contract and Unjust Enrichment Must be Dismissed in Their Entirety

### *a. Plaintiff's Putative Unjust Enrichment Claim Must be Dismissed*

Plaintiff's purported unjust enrichment claim must be dismissed because the subject matter of the claim is covered by an express contract between Plaintiff and HTI. *See, e.g., Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, CIV. A. 07-1342 HAA, 2008 WL 482327 (D.N.J. Feb. 19, 2008) (dismissing unjust enrichment claims because "it is clear that the subject matter of this dispute is covered by an express contract"). Plaintiff argues that dismissal of this claim would be premature because she is allowed to plead alternative theories. However, while a litigant in theory could potentially plead unjust enrichment as an alternative claim, Plaintiff

cannot do so here. This is because Plaintiff specifically incorporates her written agreement into the allegations of her claim.[11] Plaintiff also incorporates her entire putative unjust enrichment claim into her breach of contract claim. *See* Complaint, at Count IV, ¶ 1. Consequently, Plaintiff's alleged unjust enrichment claim is not an independent cause of action from her putative breach of contract claim and cannot stand.[12]

Plaintiff's putative claim for unjust enrichment must also be dismissed because Plaintiff failed to allege that she provided a benefit that enriched the School <u>beyond</u> its contractual rights.[13] Here, Plaintiff only alleged that "Defendants have been unjustly enriched by accepting the Students' tuition and fees without providing a benefit in return." Complaint, at Count III, ¶ 2. However, the tuition amounts alluded by Plaintiff were due under the Enrollment Agreement (referenced in the Complaint), and Plaintiff failed to allege another benefit conferred beyond those provided under the contract. Plaintiff's claim must therefore be dismissed.

***b. Plaintiff's Putative Breach of Contract Claim Must Be Dismissed***

Plaintiff's arguments to save her breach of contract claim are baseless. It still remains unknown, even after her Response, whether Plaintiff's breach of contract claim concerns Plaintiff's written agreement with HTI, or whether it concerns some other purported oral agreement. In either case, Plaintiff's claim must be dismissed. To the extent the claim is based

---

[11] *Compare* Complaint, Third Count, ¶ 1 (incorporating all allegations of the First and Second Counts) *with* Complaint, First Count, ¶ 8 ("Each of the Students signed an 'Student Enrollment Contract' with HTI. The Students entered into enrollment agreement with HTI…").

[12] *See e.g. Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06–5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007) (dismissing unjust enrichment claim "because an unjust enrichment claim must be independent of a breach of contract claim and a Plaintiff may not bring an unjust enrichment claim while also pleading the existence of a contract.")

[13] The "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant <u>beyond its contractual rights</u>." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (emphasis added).

{00328394}

on a written agreement, Plaintiff failed to identify any provision of the contract that has been breached. And, to the extent the claim is based on some other alleged oral agreement or statement, the claim fails because the written Enrollment Agreement is fully integrated and cannot be altered by other supposed oral statements.[14] For these reasons, Plaintiff's putative claim for breach of contract must be dismissed in its entirety.

### *c. The Claims Against the Individual Defendants Must be Dismissed*

To the extent Plaintiff's putative claims for unjust enrichment and breach of contract are allowed to remain (and they should be dismissed), the Court must nevertheless dismiss these claims against individual defendants Joy Crowley and Bashir Mohammad, M.D. Plaintiff's Response completely ignores the arguments that Plaintiff's putative claims must be dismissed against the individual defendants, likely because Plaintiff has no meaningful response. Accordingly, for the reasons discussed herein and in the School's Motion to Dismiss, the Court should dismiss Plaintiff's putative claims against the individual defendants.

## V. Plaintiff's Request for Attorneys' Fees and Injunctive Relief Is Improper

Plaintiff's Complaint seeks both injunctive relief and attorney's fees (or "counsel fees") in connection with all four of her purported claims. Plaintiff argues in her Response that she can supposedly seek this relief under the CFA. However, articulating an alleged basis for entitlement to injunctive relief and attorney's fees in her Response, as opposed to in her Complaint, is insufficient. Moreover, Plaintiff is, at a minimum, required to plead the relevant standards for obtaining such relief, which Plaintiff failed to do. For example, to obtain injunctive relief, Plaintiff must show that "she is likely to suffer future injury from defendant's threatened illegal

[14] *See* Enrollment Agreement, attached to Motion to Dismiss as Exhibit B, at p. 2; *Schlossman's, Inc. v. Redcliff*, 70 A.2d 493, 495 (N.J. 1953) (parol evidence is not to be utilized to vary or add to terms in a complete written contract which expresses the parties' agreement).

conduct."[15] Similarly, since attorney's fees are a form of special damages, they must be specifically pled under Rule 9(g), Fed.R.Civ.P.[16] Plaintiff fails to specifically plead any alleged entitlement to injunctive relief or attorney's fees, and fails in her Response to provide any statutory or contractual basis for seeking this relief under her non-CFA claims. Plaintiff's requests for this relief must therefore all be stricken.

## VI. Sanctions are not Warranted or Justified Against the School

To distract from the deficiencies of her Complaint, Plaintiff asks the Court to "review" the Motion to Dismiss "for sanctionable conduct under Rule 11(b)(3)" because of two items, neither of which merit sanctions. As a threshold matter, Plaintiff's "invitation" to impose sanctions is improper. Rule 11 requires 21 days before filing any sanctions request with the Court, service of the request on the opposing party that details the supposed offending act and allows the party during this safe harbor to withdraw or correct the act. *See* Fed.R.Civ. P. 11(c)(2). Here, prior to "inviting" sanctions, Plaintiff failed to serve the requisite motion or even raise her supposed grievance with the School, which is itself a sanctionable act.

Nevertheless, Plaintiff's "invitation" is baseless. Plaintiff first complains that the School cited to materials referenced in the Complaint, like the Enrollment Agreement, or public records, such as the School's institutional accreditation by ACCSC, without an affidavit. Contrary to Plaintiff's objection, the School may cite these items in opposition to a motion to dismiss.[17]

---

[15] *See, e.g., Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990) (emphasis added).

[16] *See, e.g., Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir. 1973), citing *Western Casualty & Surety Co. v. Southwestern Bell Tel. Co.*, 396 F.2d 351, 356 (8th Cir. 1968) ("Claims for attorney fees are items of special damage which must be specifically pleaded under Federal Rule of Civil Procedure 9(g)").

[17] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider .. other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a

Plaintiff then argues that the School should have cited *Suarez v. Eastern Int'l College*, 428 N.J. Super. 10 (App. Div. 2012), and falsely insinuates that the School hid controlling and settled New Jersey law from the Court regarding the application of the learned professional exemption. This is simply untrue. First, Plaintiff distorts *Suarez* by claiming it is "directly on point" and by implicitly touting it as a rule that the CFA's learned professional exemption is somehow inapplicable in this case (or to educational institutions in general). However, contrary to Plaintiff's claim, *Suarez* is not "on point" and only found the learned professional exemption inapplicable because the defendant in *Suarez* "identified no regulatory body that defines uniform standards for the services it provides or its activities as a for-profit training school, let alone regulation that would present a 'patent and sharp' conflict with the application of the CFA." 428 N.J. Super. at 39. This is not like the instant case, where the School advised the Court of a comprehensive regulatory framework that governs HTI's conduct, starting with the School's institutional accreditor ACCSC, and with a second layer of regulation under New Jersey law and the rules promulgated by the New Jersey Department of Education and the New Jersey Department of Labor and Workforce Development. *See* Motion to Dismiss, at III.A.2.

Moreover, despite Plaintiff's insinuation, the *Suarez* case is not controlling on this Court or even settled law. When the District of New Jersey "sits in diversity, it is bound by the decisions of [the] highest court of the state whose substantive law this court must apply." *Polizzi Meats, Inc. v. Aetna Life & Ins. Co.*, 931 F.Supp. 328, 340 (D.N.J. 1996). With respect to rulings of the lower New Jersey appellate courts, "[t]his court is guided, but not bound, by the rulings of

---

court may take judicial notice"); *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Morris County Cardiology Consultants, PA v. Nw. Mut. Life Ins. Co.*, No. CIV.A.08-00308SRC, 2009 WL 3068260 (D.N.J. Sept. 21, 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider … documents attached or specifically referenced in the complaint if the claims are based upon those documents").

the lower New Jersey appellate courts, which may provide indicia of how the state's highest court might decide an issue."[18] Here, *Suarez* is not controlling on this Court because it was not decided by the highest court in New Jersey. And it is not even "settled" law as *Suarez* is currently being appealed to the Supreme Court of New Jersey because the undersigned believes it to be an incorrect application of the CFA and therefore wrongly decided.[19]

What is more, although Plaintiff distorts *Suarez* to besmirch the School, Plaintiff completely ignores that the School actually cited a District of New Jersey decision that is directly on point and represents the law of this Court, which unambiguously holds that the learned professional exception applies to educators such as the School. *See, e.g., Watiti v. Walden University*, 2008 WL 2280932 (D.N.J. 2008). The Court should therefore decline Plaintiff's baseless "invitation" to impose sanctions.[20]

---

[18] *Id.* (internal quotations omitted); *see also Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981) ("In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions…").

[19] In *Suarez* the Court incorrectly analyzed the applicability of the CFA to career training schools by relying on the standard discussed in *Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255 (1997), which applied to preemption cases, and wholly ignored the relevant law governing the *learned profession exemption* to the CFA.

[20] Indeed, because *Suarez* is not controlling, and because it was nevertheless disclosed by Plaintiff, the School's counsel was also not required to cite to it under the New Jersey Rules of Professional Conduct. *See* RPC 3.3(a)(3) ("A lawyer shall not knowingly:…(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel") (emphasis added).

**CONCLUSION**

For the reasons discussed herein, as well as those set forth in the School's Motion to Dismiss [D.E. 4], defendants Healthcare Technical, Bashir Mohammad, M.D., and Joy Crowley request that the Complaint be dismissed with prejudice in its entirety.

Dated: November 13, 2012

GACCIONE POMACO P.C.
524 Union Avenue
P.O. Box 96
Belleville, New Jersey 07109
Telephone: (973) 759-2807
Facsimile: (973) 759-6968
Attorneys for Defendants
Healthcare Training Institute, Inc.,
Bashir Mohammad, M.D., and Joy Crowley

DATED: November 13, 2012

By: */s/ Joseph A. DeFuria*
JOSEPH A. DeFURIA (5124)