UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**LESLIE A. FARBER, LLC**
33 Plymouth Street, Suite 204
Montclair, New Jersey 07042
Ph. (973) 509-8500

**LAW OFFICE OF JEFFREY J. ANTONELLI, LTD.**
30 North LaSalle Street, Suite 3400
Chicago, IL 60602
Ph. (312) 201-8310
Attorneys for Plaintiffs

| | |
|---|---|
| **NANCY ELLITHY and all others similarly situated,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**HEALTHCARE TRAINING INSTITUTE, INC., a New Jersey for-profit corporation, BASHIR MOHAMMAD, M.D., JOY CROWLEY and JOHN DOE 1 THROUGH X (X being a number as yet unknown, being fictitious persons or corporations whose identities are presently unknown),**<br><br>*Defendants.* | Civil Action No. 2:12-cv-06209-CCC-JAD<br><br>CIVIL ACTION<br><br>**SECOND AMENDED COMPLAINT**<br>(CLASS ACTION)<br>**AND**<br>**JURY DEMAND** |

Plaintiffs, NANCY ELLITHY, residing at 2 Walden Court, Old Bridge, Middlesex County, New Jersey, and all others similarly situated, by way of Complaint against the defendants, say:

JURISDICTION AND VENUE

1. Jurisdiction of this Court may exist under the Class Action Fairness Act ("CAFA"). However, the contents of this Amended Complaint may divest the Court of jurisdiction under the mandatory abstention provisions of the CAFA. 28 U.S.C. § 1332(d)(4).

2. Venue is proper within this District pursuant to 28 U.S.C. § 1391.

1

## THE PARTIES

3. At all times relevant hereto, defendant, HEALTHCARE TRAINING INSTITUTE, INC. (hereinafter "HTI"), is and was a New Jersey for-profit corporation, with its principal offices located at 1969 Morris Avenue, City of Union, County of Union, and State of New Jersey.

4. Defendant, BASHIR MOHAMMAD, M.D. (hereinafter "Mohammad"), is a New Jersey citizen, and at all relevant hereto, was defendant HTI's educational director.

5. Defendant, JOY CROWLEY ("Crowley"), is a New Jersey citizen, and at all times relevant hereto, was a sales representative of defendant HTI.

6. At all times relevant hereto, HTI was a Private Training Provider, pursuant to the New Jersey law.

7. At all times relevant hereto, defendants were "person[s]" and their sale of education services was "trade" or "commerce" under the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1 et seq.

8. At all relevant times, plaintiffs (the "Students") were or are "consumers" under the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-1, et seq.

9. This action is brought by the plaintiffs on behalf of themselves and all other persons similarly situated whose joinder in this action is impracticable because the class is so numerous, though the Students do not know the exact size of the class because such information is exclusively in defendants' possession.

## THE CLASS

10. The class consists of students who paid for, received financial aid for, and/or took out loans and attended HTI's courses conducted in New Jersey and who graduated or expected to graduate from HTI in the years 2009-2011 (hereinafter "Students"). Each of the Students signed

2

a "Student Enrollment Contract" with HTI, entered into enrollment agreement(s) with HTI within the State of New Jersey, and is a citizen of the State of New Jersey.

11. The Students' claims are typical of the claims of all class members in that the Students were direct consumers of HTI's services like all other class members. The Students' claims arise from the same conduct giving rise to the claims of the class, and the relief that the Students seek is common to the class.

12. Plaintiffs includes Nancy Ellithy and others similarly situated.

13. There are questions of law or fact common to the members of the class that predominate over questions of law or fact affecting only individual members. Questions of law or fact common to all members of the class include, but are not limited to: Whether defendants violated the New Jersey Consumer Fraud Act, committed common law fraud, and were unjustly enriched, and are liable therefore, by representing to Students that: (1) The school was accredited by the Commission on Accreditation of Allied Health Education Programs (hereinafter "CAAHEP"); (2) The laboratory technicians/were all certified by CAAHEP; (3) HTI graduates were highly sought after as job candidates; and (4) Upon course completion, the Students would have sufficient certification and be qualified to obtain employment as a certified diagnostic medical sonographer technician. Questions of law or fact affecting only individual members of the class which are likely to arise in this action include, but are not limited to: Whether defendants' violated the New Jersey Consumer Fraud Act, committed common law fraud, and were unjustly enriched in representing to students: (1) The cost of tuition; (2) The amount of financial aid they each would receive; and (3) The number of course credits a full-time student would earn upon completion of course study. These and other questions of law and fact predominate over any questions affecting only individual class members.

14. The claims of the named plaintiff are that defendants violated the New Jersey Consumer Fraud Act, committed common law fraud, and were unjustly enriched in making various false statements to the students, which is true of the claims of the entire class, and are therefore typical of the claims of the class.

15. Plaintiff Nancy Ellithy, an individual, is representative of all individuals who are current or former HTI students and will, as a representative party, fairly and adequately protect the interests of that class.

16. The Class Representative has suffered pecuniary and non-pecuniary injuries as a result of defendants' practices which are typical of those of the class members. The Students were direct consumers of HTI's services like all other class members. The Students' claims arise from the same conduct giving rise to the claims of the class, and the relief that the Students seek is common to the class.

17. The maintenance of this action as a class action is superior to other available methods of adjudication in promoting the convenient administration of justice and in achieving a fair and efficient adjudication of the controversy in this matter because:

a. The prosecution of separate actions by individual members of the class would create a risk of:

   i. inconsistent or varying adjudications with respect to individual members of the class that would confront defendants with incompatible standards of conduct;

   ii. effective redress for each and every class member against defendants may be limited or even impossible when serial, duplicitous, or concurrent litigation occurs on these disputes; and

      iii.      adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members of the class not parties to the adjudications or substantially impair or impede their ability to protect their interest because of the counsel fees, discovery and other costs necessary to prosecute individual claim;

b.      Final equitable and declaratory relief is appropriate in this action in order to prevent harm to future students of HTI;

c.      The action is manageable as a class action because, while the expected members of the class are numerous, it is not expected to be more than the Courts of this State are used to handling, and the class action procedure which involves all class members, provides fewer management difficulties to defendants and the Court;

d.      In view of the complexity of the issues and expense of litigation, the separate claims in view of the complexity of the issues and the expense of litigation the separate claims of the individual class members may be insufficient in amount to support the prosecution of separate actions because the injury suffered by each individual class member may be disproportionate to the burden and expense of individuals' prosecution of complex and extensive litigation;

e.      It is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action because plaintiffs seek to recover the hundreds of thousands or more wasted tuition dollars spent and/or owed by the student for a virtually worthless education;

f.      Many of the class members are not aware of their right to legal redress, or the extent to which defendants' wrongful conduct described herein have caused them to be

5

unemployable in their chosen field despite their successfully completing HTI's course of studies;

g.      Because most members of the class are believed to be of limited financial means, a class action is essential and individual litigation for nearly all class members would not be economically feasible, whereas defendants have derived enormous aggregate profits from wrongfully deceiving hundreds to thousands of former students in amounts ranging from approximately $3,000 to more than $32,000 each.  In the absence of a class action, these serious wrongs will go unredressed.

## FIRST COUNT

18.     From 1998 to the present, HTI has purported to operate a technical institution preparing students for careers in Diagnostic Medical Technology.

19.     At all times relevant hereto, HTI offered programs in, among other things, Diagnostic Medical Sonography (also known as "ultrasound") training.

20.     HTI's Crowley represented to plaintiff, Nancy Ellithy, in person in Crowley's office on HTI's premises on or about July 20, 2009, and to students, including Nick Badalato, Preeti Patel-Neji, Sejal Patel, Nerlande Pierre and others, at various times from September 2009 through March 2011, that HTI's health programs would qualify its graduates for national registry examinations and job opportunities as certified technicians in the field of Diagnostic Medical Sonography.  Such statements and representations were false.

21.     During student orientation in September 2009, in front of approximately 40 students, Crowley stated that students who already had a bachelor's college degree, only needed to take HTI's 1-year program and get six months of experience, to be able to sit for the ARDMS examination.  She also stated that students who did not have a bachelor's degree would only

need to take HTI's 2-year program to be able to take the ARDMS examination right after graduation. Such statements and representations were false.

22.  Crowley again stated to plaintiff, Nancy Ellithy, in April 2010, in person, on HTI's premises, that Ellithy would be qualified and able to sit for the examination of the American Registry of Diagnostic Medical Diagnostic Sonography (hereinafter "ARDMS") examination after graduation from HTI's program and having worked six (6) months. Such statements and representations were false.

23.  Defendant Mohammad told plaintiff, Nancy Ellithy, while in HTI's laboratory in or about June 2010, that when she (Ellithy) completed the HTI program, she would be able to get a job "right away." HTI professor Ammarah Assad made similar claims to plaintiff, Nancy Ellithy, many times in November 2009, April 2010 and May 2010. Professor Assad also told Ms. Ellithy, in person, in HTI's laboratory, in May 2010, not to pursue the 2,000 hour program (combined classroom and clinical hours) because she (Ellithy) will get hired based on the 1-year program she already had taken. Such statements and representations were false.

24.  Defendant Mohammad stated to plaintiff, Nancy Ellithy, and other students while they were in HTI's laboratory in June 2010 that HTI's graduates were continually sought after by employers, especially those employers where students performed their clinical hours, and that employers were constantly contacting HTI in need of employment candidates, and that HTI offered job placement assistance. Such statements and representations were false.

25.  Defendants made these false statements regarding placement statistics and placement assistance in order to induce the Students to enroll in HTI.

26.  Plaintiff Nancy Ellithy graduated HTI's Medical Sonography program with a total of 1,000 hours, consisting of 600 didactic hours and 400 clinical hours.

27. At all times relevant hereto, the Students enrolled in HTI's program in order to become registered and to become qualified for jobs in their chosen field.

28. At all times relevant hereto, HTI's program failed to qualify the Students for registry examinations or jobs in their field.

29. Certification and registry have become increasingly necessary for employment in the field of Diagnostic Medical Sonography. Almost all ultrasound technician jobs require the employee to be registered in Ultrasound or require that the employee become registered within one year of being hired.

30. Two relevant agencies certify or register professionals in the field of Diagnostic Medical Technology. Those agencies are the American Registry of Diagnostic Medical Diagnostic Sonography (ARDMS) and Cardiovascular Credentialing International (hereinafter "CCI").

31. ARDMS registers Diagnostic Medical Sonographers, Diagnostic Cardiac Sonographers, Vascular Technologists and Physicians in Vascular Interpretation.

32. Employers prefer to hire diagnostic medical technicians that are certified or registered and most or all insurance plans will not pay for tests performed by non-ARDMS certified technicians.

33. HTI, through its Ultrasound courses, purported to provide training for students interested in becoming Diagnostic Medical Sonographer Technicians.

34. To become certified or registered, a student must meet the prerequisite criteria to take the examination.

35. The ARDMS provides pathways for students who graduate from an institution accredited by an ARDMS recognized accrediting body and students with a minimum of a four-year degree to become registered.

36. However, HTI was not accredited by an accrediting body recognized by ARDMS, and almost none of the Students had four-year college degrees.

37. The ARDMS pathway to registration for students graduating from non-accredited schools without four-year degrees is more demanding in that students must have completed:

    h. "a single two-year allied health education program that is patient-care related" which included "(1) 24 full-time consecutive calendar months, or (2) 60 semester credits, or (3) 84 quarter credits, and require[d] a clinical internship/externship to complete the program"; and

    i. "12 months of full-time clinical ultrasound/vascular experience."

38. HTI's healthcare programs failed to meet the requirements of the ARDMS examination because HTI programs were less than 24 months in length and did not include relevant clinical experiences. Thus, even upon successful completion of HTI's program, a student would not be allowed to take the ARDMS registry exam.

39. Cardiovascular Credentialing International (hereinafter "CCI"), another registration and certification agency, registers Cardiac Sonographers, Vascular Specialists, Cardiovascular Invasive Specialists, and Cardiac Electrophysiology Specialists and certifies Cardiographic Technicians.

40. HTI, through its Ultrasound courses, purported to provide training for students interested in becoming certified Diagnostic Medical Sonographer Technicians.

41. In order to take CCI's Registry Examinations, a student must have completed one year of specialty training and a minimum of 800 clinical hours in his or her field.

42. Under CCI's rules, the 800 clinical hours must be completed during the course of instruction as an integrated part of the curriculum. In other words, a student must complete the 800 clinical hours through the school's program prior to graduation.

9

43. To become a Registered Cardiac Sonographer, CCI requires the following, among other things:

> RCS5: A graduate of a NON-programmatically accredited program in Cardiac Medical Sonography (Echocardiography) which has a minimum of one (1) year of specialty training and includes a minimum of 800 clinical hours in the specialty in which the examination is being requested
> \* IMPORTANT: If an individual's clinical hours were obtained after graduation or if the hours are not a requirement for their educational program, then those hours WOULD NOT count toward the 800 hour minimum under qualification RCS5.
> \*\* An accredited program is accredited by an agency recognized by the Council for Higher Education Accreditation (CHEA), United States Department of Education (USDOE) or Canadian Medical Association (CMA), that specifically conducts programmatic accreditation for cardiovascular technology, diagnostic cardiac sonography, or vascular technology." (Emphasis added.)

44. HTI's program to become a certified Diagnostic Medical Sonographer Technician failed to meet the requirements of CCI Registry Examinations because HTI's programs failed to include an 800-hour clinical experience as an integral part of the program.

45. Thus, even upon successful completion of HTI's program, a student would not be allowed to take the CCI registry exam.

46. As noted above, Defendants failed to inform the Students that, even if they successfully completed HTI's program, that they would not be allowed to sit for registry examinations and thus, HTI's programs were worthless.

47. In addition to the foregoing allegations, defendants Mohammad and Crowley were actively engaged in the day-to-day operations of HTI and orchestrated and participated in the wrongful actions alleged herein.

48. Among other specific fraudulent misrepresentations, as described above, HTI's Joy Crowley knowingly and falsely stated to plaintiff Nancy Ellithy and other prospective students that HTI was sufficiently accredited for students who completed their course of study to

be able to take the ARDMS (American Registry for Diagnostic Medical Sonography) examination, which is necessary to be qualified to perform sonogram test on patients.

49. In reality, HTI's programs were a fraud and a sham because they failed to include relevant clinical experiences and, upon successful completion of the programs, students could not take national registry exams and were not qualified for jobs in their field.

50. Thus, hardworking, diligent students paid tuition, attended courses, completed homework, passed up other lucrative opportunities and in return received a worthless education from HTI.

51. As illustrated above, in order to qualify to take the national registry examination, a student must complete the applicable course work and a specific number of clinical hours as an integral part of the program.

52. Clinical hours are the number of hours of hands-on training using the medical equipment for each specific diagnostic test that students must perform on patients in order to gain the skills necessary to competently perform their job duties.

53. At all relevant times as described above, defendants falsely represented to the Students that HTI's programs and tuition included sufficient clinical hours for them to become certified in order to sit for the national registry examinations.

54. At all relevant times as described above, defendants falsely represented to the Students that a very high percentage of the local hospitals or clinics where the Students performed their clinical hours would hire the students during these internships and afterwards.

55. Clinical experience that was not completed as part of HTI's program and performed after graduation from HTI did not meet the clinical experience requirements to qualify the students for national registry examinations. According to ARDMS,

11

> Clinical ultrasound/vascular experience may be obtained one of two ways: (1) being employed as an ultrasound/vascular sonographer in a clinical setting for a minimum of 12 months and a minimum of 1680 hours, or (2) successfully completing a formal, full-time ultrasound/vascular program that is a minimum of 12 months in length, a minimum of 1680 total program hours, **including appropriate clinical and didactic hours,** and requires a Clinical internship/ externship to complete the program. If the total length of the program exceeds 12 months, the applicant must successfully complete the program in its entirety prior to using the program as documentation of the required clinical ultrasound/vascular experience. It is recommended that an applicant be directly involved in a minimum of 800 clinical diagnostic cases during his/her clinical experience in each specialty area for which he/she is applying. Clinical diagnostic settings include hospitals, clinics and private practices. ARDMS does not accept volunteer, instructorship, unpaid, barter or veterinarian experience. The time frames in which the education and clinical requirements are met cannot overlap. Clinical experience earned to document the education requirement cannot also be used to support the clinical requirement. (Emphasis added).
> 
> See ARDMS SPI Requirement and General Prerequisites, annexed hereto as "Exhibit A," at 5, note 3 (emphasis added).

56. However, HTI's Diagnostic Medical Sonographer Technician course provided only 1,000 hours of training.

57. Upon graduation from HTI, the Students such as Nancy Ellithy applied to the registry agencies to take the examinations. Much to the Students dismay, the registry agencies informed the Students that they could not take the examination because HTI's courses did not qualify.

58. Graduates are extremely unlikely to satisfy the clinical requirement via on the job experience via section (1) of the ARDMS requirements recited in paragraph 55 above, because almost no employers will hire an applicant in the first place if he or she is not already Registered. In other words, if the job applicant is not immediately eligible to take the registry exam directly out of school, he or she is out of luck.

59. The United States Senate Committee on Health, Education, Labor and Pensions recently found as follows:

> [N]o State laws mandate that diagnostic sonographers graduate from programs accredited by the Commission on Accreditation of Allied Health Education Programs (CAAHEP). However, most employers seek to hire only registered sonographers, and registration is not open to recent graduates of non-accredited degree programs. In order to become registered, students must either graduate from an accredited program or work or a number of years in the field. Because employers prefer to hire already-registered sonographers, gaining work experience in lieu of an accredited degree can be very challenging. Accordingly, while State law does not create an absolute barrier to practicing for students from unaccredited programs, the practical effect can be the same for many students.
> SENATE COMMITTEE ON HEALTH, EDUCATION, LABOR AND PENSIONS, 112TH CONG., 2D SESSION, FOR PROFIT EDUCATION: THE FAILURE TO SAFEGUARD THE FEDERAL INVESTMENT AND ENSURE STUDENT SUCCESS, at 118 (Comm. Print 2012) (available at http://www.gpo.gov/fdsys) (Footnotes omitted.)

60. At all relevant times, defendants knew that HTI's course programs failed to include either the appropriate course instruction or the relevant clinical hours to qualify the Students to take national registry examinations.

61. Defendants knew that their representations described above to prospective and then current students, regarding HTI graduates' ability to qualify for registry examination, were false or were made with reckless disregard of their truth or falsity.

62. Defendants knew the representations described above concerning accreditation and clinical training hours, and job placement were false at the time they made them or were made with reckless disregard of their truth or falsity.

63. Defendants intended that the Students rely upon these false representations.

64. The false representations caused confusion among prospective students who were not sophisticated in matters of accreditation or clinical hours or job placement.

65. The Students relied upon these representations to their detriment believing defendants were reputable and able to fulfill their promises.

66. Had the Students known that the defendants' representations were false, they would not have enrolled in HTI.

67. HTI has not placed or attempted to place any of the Students in jobs that the Students are qualified for.

68. As a result of defendants' aforementioned wrongful conduct, few, if any, of the Students could get a job in her or his chosen field, and all have suffered financial losses from paying tuition and/or are indebted for the payment of student loans.

69. The Students relied upon defendants' fraudulent misrepresentation and, as a result, have suffered substantial economic harm.

70. Each of the Students entered into Student Enrollment Contract with HTI.

71. Defendants' false or misleading statements and promises described above had the tendency or capacity to influence or induce the Students to enroll in HTI's programs.

72. Defendants made these false representations and promises to induce the Students to enroll in HTI's programs.

73. Defendants made these false representations with the intent that the Students rely upon them.

74. The Students relied upon the false representations of defendants to their detriment by spending time and money pursuing a worthless education that, even when completed, would not allow them to take required professional examinations or pursue their chosen profession.

75. Plaintiffs sustained substantial economic damages as a result of defendants' wrongful actions consisting of tuition and costs paid, past and future student loan costs, and lost income and career opportunities.

76. Defendants' actions constitute an unconscionable commercial practice under the New Jersey Consumer Fraud Act.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for compensatory damages, consequential damages to be proven at trial, treble damages, attorney's

fees and costs, interest, injunctive relief barring defendants from making similar misrepresentations alleged herein, and any other relief the Court deems just and adequate.

## SECOND COUNT

1. Plaintiffs incorporate and reallege all of the allegations in the First Count as if more specifically set forth herein.

2. Defendants' actions as set forth above constitute common law fraud recognized by the Courts of the State of New Jersey.

3. As a result of defendant fraudulent misrepresentations, plaintiffs have suffered financial losses by way of tuition and costs paid, past and future student loan costs, and lost income opportunities.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages, punitive damages, costs, interest and counsel fees, injunctive relief barring defendants from making similar misrepresentations alleged herein, and any other relief the Court deems just and adequate.

## THIRD COUNT

1. Plaintiffs incorporate and reallege all of the allegations in the First and Second Counts as if more specifically set forth herein.

2. Defendants have been unjustly enriched by accepting the Students tuition and fees without providing a benefit in return.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages, costs, interest and counsel fees, injunctive relief barring defendants from making similar misrepresentations alleged herein, and any other relief the Court deems just and adequate.

## FOURTH COUNT

1.	Plaintiffs incorporate and reallege all of the allegations in the First and Second Counts as if more specifically set forth herein.

2.	As noted above, in addition to the Student Enrollment Contract and other documents signed by the parties, defendants promised to plaintiffs that HTI and/or its diagnostic medical sonographer technician programs were accredited by a body recognized by ARDMS, that HTI's programs and tuition included sufficient classroom and clinical hours for them to become certified in order to sit for the national registry examinations such as CCI and ARDMS, and that a very high percentage of the local hospitals or clinics where the Students performed their clinical hours would hire the students during their internships and afterwards.

3.	In consideration of the terms in the Student Enrollment Contract and other documents signed by the parties and the aforementioned promises that defendants made to plaintiffs, plaintiffs entered into contracts with defendants and paid tuition to defendants and/or obligated themselves repay loans accordingly.

4.	Defendants breached these contracts by failing to provide medical sonographer technician programs that were accredited by a body recognized by ARDMS, failing to provide the Students with programs which included sufficient classroom and clinical hours satisfying the minimum prerequisites in order to sit for national registry examinations such as CCI and ARDMS, and by failing to ensure that a very high percentage of the local hospitals or clinics where the Students performed their clinical hours would hire the students during internships and afterwards.

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, for damages, costs, interest and counsel fees, injunctive relief barring defendants from making similar promises alleged herein, and any other relief the Court deems just and adequate.

                                                      LESLIE A. FARBER, LLC
                                                      Attorneys for Plaintiffs

                                      By:     s/ Leslie A. Farber
Dated: July 30, 2013                          Leslie A. Farber


                                                      LAW OFFICE OF JEFFREY J.
                                                      ANTONELLI, LTD.

                                      By:     s/ Jeffrey J. Antonelli
Dated: July 30, 2013                          Jeffrey J. Antonelli *(pro hac vice)*
                                                     30 North LaSalle Street, Suite 3400
                                                     Chicago, IL 60602
                                                     Tel. 312/201-8310

## JURY DEMAND

Please take notice that plaintiffs demand trial by jury on all issues so triable.

                                                     LESLIE A. FARBER, LLC
                                                     Attorneys for Plaintiff

                                      By:     s/ Leslie A. Farber
Dated: July 30, 2013                          Leslie A. Farber

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, or is any such action or proceeding presently contemplated.

Dated: July 30, 2013

s/ Leslie A. Farber
Leslie A. Farber