UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

## LESLIE A. FARBER, LLC

33 Plymouth Street, Suite 204
Montclair, New Jersey 07042
Ph. (973) 509-8500

**LAW OFFICE OF JEFFREY J. ANTONELLI, LTD.**

30 North LaSalle Street, Suite 3400
Chicago, IL 60602
Ph. (312) 201-8310
Admitted *pro hac vice*

*Attorneys for Plaintiffs*

| | |
|---|---|
| **NANCY ELLITHY and all others similarly situated,** | Hon. Claire C. Cecchi, U.S.D.J |
| *Plaintiffs,* | Civil Action No.: 2:2012-cv-06209 |
| | RETURN DATE: Aug. 19, 2013 |
| vs. | Document Filed Electronically |
| **HEALTHCARE TRAINING INSTITUTE, INC., a New Jersey for-profit corporation, BASHIR MOHAMMAD, M.D., JOY CROWLEY, et al,** | ORAL ARGUMENT REQUESTED |
| *Defendants.* | |

## BRIEF IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS

*Of Counsel and On the Brief:*
Leslie A. Farber, Esq.
Jeffrey J. Antonelli, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... i

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

STANDARD OF REVIEW .................................................................................... 6

LEGAL ARGUMENT............................................................................................ 9

      I.   Defendants' motion to dismiss is moot and should be denied. .................................... 9

      II.   Plaintiffs Sufficiently Pled a Claim Under CFA...................................................... 10

           a.   Defendants' conduct falls within the CFA................................................... 11

           b.   The Learned Professional Exemption is Inapplicable to a Private
               Training Provider. ...................................................................................... 18

      III.   Plaintiffs' Fraud Claims meet the requirements of Fed. R. Civ. P. 9(b)................ 20

      IV.   Plaintiffs Properly Pled Unjust Enrichment and Breach of Contract Claims.......... 23

      V.   Defendants Have Impermissibly Included Allegations Outside the Pleadings
          In Their Arguments................................................................................................. 26

      VI.   The New Jersey Consumer Fraud Act Allows Injunctive relief and
          Attorneys' Fees. ...................................................................................................... 26

CONCLUSION...................................................................................................... 28

# TABLE OF AUTHORITIES

## **CASES**

American & Efird, LLC, v. Pittsfield Plastics Engineering, Inc., No. 12-194 [ECF No. 20] (W.D.N.C. Jul. 12, 2012) ............................................................................. 9

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) .................................................................. 6, 7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ......................................... 6, 8, 12

BOC Group, Inc. v. Lummus Crest, Inc., 251 N.J. Super. 271 (Law Div. 1990) ......................... 13

Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp.2d 557 (D.N.J. 2002) ......................................................................................................... 11

Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96 (3d. Cir. 1983) ................................. 20

Coastal Group v. Dryvit Sys. Inc., 274 N.J. Super. 171 (App. Div. 1994) .................................. 13

Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994) .................................................. 22, 26

Daaleman v. Elizabethtown Gas Co., 77 N.J. 267 (1978) ........................................... 27

D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11 (App. Div. 1985) ...................... 11, 17

Electric Mobility Corp. v. Bourns Sensors/Controls, 87 F. Supp.2d 394 (D.N.J. 2000) .............. 17

Eli Lilly & Co. v. Roussel Corp., 23 F. Supp.2d 460 (D.N.J. 1998) ........................................... 21

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) .................................................. 7, 17

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007) .................................................... 23

Furst v. Einstein Moomjy, Inc., 182 N.J. 1 (2004) ....................................................... 22

Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997) ............................................... 11, 21

Harnish v. Widener Univ. School of Law, No. 12-608 [ECF No. 20] (D.N.J. Jul. 3, 2012) ........ 10

Harnish v. Widener Univ. School of Law, No. 12-608 [ECF No. 33] (D.N.J. Mar. 20, 2013) ................................................................................................... 15, 16

Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J.Super. 350 (App. Div. 1986), certif. denied, 107 N.J. 60 (1986) ..................................................................... 13

In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ......................... 8, 21, 26

Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372 (2007).................................................................................................................... 11

Jarvis v. A & M Records, 827 F. Supp. 282 (D.N.J. 1993) ........................................................... 26

Kugler v. Romain, 58 N.J. 522 (1971)................................................................................. 10, 11

Lee v. First Union Nat'l Bank, 199 N.J. 251 (2009) .................................................................... 18

Lemelledo v. Benefit Mgmt. Corp., 150 N.J. 255 (1997)................................................... 11, 14, 18

Leon v. Rite Aid Corp., 340 N.J. Super. 462 (App. Div. 2001) .................................................... 11

MacDonald v. Thomas M. Cooley Law School, 880 F. Supp.2d 785 (W.D. Mich. Jul. 20, 2012), aff'd, __ Fed. Appx. __, Nos. 12-2066/2130 (6th Cir. Jul. 30, 2013) .................. 14

Manisco v. Brother International Corp., 627 F. Supp.2d 494 (D.N.J. 2009)......................... 24, 25

Massarsky v. General Motors Corp., 706 F.2d 111 (3d Cir. 1983) ............................................. 26

Mazza v. American Honda Co., 666 F.3d 581 (9th Cir. 2012)..................................................... 15

Naporano Iron & Metal Co. v. American Crane Corp., 79 F. Supp.2d 494 (1999)..................... 13

Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192 (3d Cir. 1993) ............. 7, 26

Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super. 200 (App. Div. 1988), aff'd, 118 N.J. 249 (1990)..................................................................... 13

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)...................................................... 7

Prof'l Cleaning & Innovative Bdg. Servs. Inc. v. Kennedy Funding Inc., 408 Fed. Appx. 566 (3rd Cir. 2010) ....................................................................................................... 11

Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786 (3d Cir. 1984)...................... 21

Smajlaj v. Campbell Soup Co., 782 F. Supp.2d 84 (D.N.J. 2011) .............................................. 22

Snyder v. Pascack Valley Hospital, 303 F.3d 271 (3d Cir. 2002) ................................................. 9

Suarez v. Eastern Int'l College, 428 N.J. Super 10 (App. Div. 2012), certif. denied, 213 N.J. 57 (2013) ................................................................................................... 18, 19, 22

Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171 (App. Div. 2012) ...................... 21

ii

Wells Fargo Bank Northwest N.A. v. American General Life Ins. Co., No. 10-1327 [ECF
No. 69] (D.N.J. May 19, 2011) ................................................................................. 25

## STATUTES

N.J.A.C. 12:41-1.3 ................................................................................................. 19

N.J.A.C. 12:41-5.1 ................................................................................................. 20

N.J.S.A. 56:8-1(c) ................................................................................................. 10

N.J.S.A. 56:8-13 ................................................................................................... 26

N.J.S.A. 56:8-19 ................................................................................................... 26

N.J.S.A. 56:8-2 ..................................................................................................... 10

N.J.S.A. 56:8-8 ..................................................................................................... 26

## RULES

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 6

Fed. R. Civ. P. 15(a)(1)(B) ...................................................................................... 9

Fed. R. Civ. P. 7.2 ................................................................................................. 26

Fed. R. Civ. P. 8 ..................................................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................................................... 20

iii

# PRELIMINARY STATEMENT

Plaintiff Nancy Ellithy, and all others similarly situated (hereinafter "plaintiffs"), hereby respond to defendants' renewed motion to dismiss plaintiffs' Complaint under FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 9(b).  Defendants proceed under the theory that plaintiffs' claims do not meet the plausibility standard under *Iqbal* and *Twombly,* or that plaintiff's fraud claims do not meet the pleading standard under FED. R. CIV. P. 9(b).

As a threshold matter, plaintiffs request that defendants' motion be denied as moot, as plaintiffs properly amended their Complaint under FED. R. CIV. P. 15(a)(1)(B) after the filing of defendants' current motion.  As a result, the Court should not consider a motion to dismiss filed against a complaint that is no longer operative.  Despite this, as set forth below, plaintiffs respond to the motion to dismiss at length herein;  however, plaintiffs will refer to the Second Amended Complaint since that is the operative pleading.

In the alternative, plaintiffs Second Amended Complaint pleads sufficient facts to make out a plausible basis for their claims under *Iqbal* and *Twombly* in over eighty factual allegations contained in their eighteen-page Complaint for each of the four causes of action:  (1) violations of the New Jersey Consumer Fraud Act, (2) common law fraud, (3) unjust enrichment, and (4) breach of contract.  As more fully set forth below, defendants' argument that plaintiffs have not pled allegations sufficient to make out a plausible claim under each of these causes of action fails.  In addition, defendants' separate argument that plaintiffs' fraud claim should be dismissed under FED. R. CIV. P. (9)(b) should be denied as plaintiffs have more than adequately pled sufficient facts underlying the fraud claims.

1

## STATEMENT OF FACTS

Plaintiff Nancy Ellithy filed a Complaint on behalf of herself and all others similarly situated against Healthcare Training Institute, Inc., a New Jersey not-for-profit corporation ("HTI"), Bashir Mohammad, M.D., HTI's educational director, and Joy Crowley ("Crowley"), for (1) violations of the New Jersey Consumer Fraud Act, (2) common law fraud, (3) unjust enrichment, and (4) breach of contract.  The proposed class is comprised of New Jersey citizens who paid for, received financial aid for, and/or took and attended HTI's courses conducted in New Jersey and who graduated or expected to graduate from HTI in the years 2009-2011, including plaintiff.  *See* Second Amended Complaint ("SAC") [ECF No. 41] at ¶ 10.  Since 1998, HTI has purported to operate a technical institution preparing students for careers in Diagnostic Medical Technology, including offering programs in Diagnostic Medical Sonography, or ultrasound, training.  *Id.* at ¶ 18.  HTI, Mohammad, Crowley, and others represented to the plaintiffs that HTI's educational programs would qualify the graduates for national registry examinations and job opportunities as certified technicians in the field of Diagnostic Medical Sonography.  *Id.* at ¶ 20-25.

In terms of the market for diagnostic medical technician jobs, almost all require the employee registered or require that the employee become registered within a year of being hired. *Id.* at 29. The two main organizations that certify diagnostic medical sonographer technicians are the American Registry of Diagnostic Medical Sonography ("ARDMS") and Cardiovascular Credentialing International ("CCI").  *Id.* at ¶ 30.  Employers prefer to hire diagnostic medical technicians who are certified or registered.  In addition, insurance plans normally do not pay for tests performed by non-certified technicians.  *Id.* at ¶ 32.

2

HTI represented that it provided training for persons interested in becoming diagnostic medical sonographer technicians (*id.* at ¶ 33), but failed to inform plaintiffs that HTI's programs did not include sufficient clinical hours for certification or registration though national organizations that provide these certifications.  *Id.* at ¶ 46.  Defendants also falsely represented to its students that a very high percentage of hospitals and clinics where the students received their clinical experience would hire the students.  On or about July 20, 2009, defendant Crowley falsely stated to plaintiff Ellithy and others that HTI's health programs would qualify graduates for national registry examinations and for job opportunities.  *Id.* at ¶ 20.  Defendant Crowley repeated such statements to several students at various times from September 2009 through March 2011, on school property.  *Id.*  In addition, during student orientation in September 2009, defendant Crowley falsely stated, before approximately forty students including plaintiff Ellithy, that students who had a bachelor's degree only had to take the one-year program and get six (6) months of experience in order to it for the ARDMS examination.  *Id.* at ¶ 21.  Defendant Crowley falsely stated at the same student orientation that those students who did not have a bachelor's degree need only take the two-year program in order to sit for the ARDMS examination.  *Id.*  In April 2010, defendant Crowley falsely stated that plaintiff Ellithy would be qualified to sit for the ARDMS examination after graduating and working for six months.  *Id.* at ¶ 22.  An HTI professor, Ammarah Assad, falsely claimed numerous times during November 2009, April 2010, and May 2010, that plaintiff Ellithy would become employed "right away," upon completion of HTI's program;  the same professor falsely stated that in HTI's laboratory that the one-year program was sufficient for Ellithy to become hired as a diagnostic medical sonographer technician upon graduation.  *Id.* at ¶ 23.  In June 2010, in HTI's laboratory, defendant Mohammed falsely stated to plaintiff Ellithy and others that employers continuously

3

sought out HTI's graduates, especially those employers where students performed their clinical hours. *Id.* at ¶ 24. During the same meeting, defendant Mohammed further falsely stated that employers constantly contacted HTI for employment candidates, and that HTI offered job placement assistance. *Id.*

HTI was and is not accredited by an accrediting organization recognized by ARDMS. *Id.* at ¶ 36. ARDMS provides examinations to both those persons who have graduated from college with a four-year degree, and those who have no college degree. *Id.* at ¶¶ 28, 30. However, those students attempting to register without a four-year degree must complete more rigorous prerequisites prior to taking an examination:

> "a single two-year allied health education program that is patient-care related" which included "(1) 24 full-time consecutive calendar months, or (2) 60 semester credits, or (3) 84 quarter credits, and require[d] a clinical internship/externship to complete the program"; and

> "12 months of full-time clinical ultrasound/vascular experience."
> *Id.* at ¶ 37.

HTI's health programs failed to meet these requirements, as HTI programs are less than 24 months long and do not include 12 months of full-time clinical experience. *Id.* at ¶ 38.

Similarly, when graduating from a non-accredited school such as HTI, the prerequisite to taking a registration examination with CCI is one year of specialty training and a minimum of 800 clinical hours in the specific field. *Id.* at ¶ 41. The 800-hour clinical training must occur through the training provider's program before a student graduates. *Id.* at ¶ 42. The 800-hour requirement cannot be met after graduation. *Id.* at 43. HTI's program failed to include the required 800-hour clinical experience, and thus, did not qualify graduates to take the CCI registry examination. *Id.* at ¶¶ 44-45.

4

Graduates of HTI's programs were unlikely to satisfy the clinical requirement for either ARDMS or CCI after graduation, even if they were allowed to, as very few employers will hire a non-Registered applicant. *Id.* at ¶ 58. To wit, last year the United States Senate Committee on Health, Education, Labor and Pensions found that:

> [n]o State laws mandate that diagnostic sonographers graduate from programs accredited by the Commission on Accreditation of Allied Health Education Programs (CAAHEP). However, most employers seek to hire only registered sonographers, and registration is not open to recent graduates of non-accredited degree programs. In order to become registered, students must either graduate from an accredited program or work or a number of years in the field. Because employers prefer to hire already-registered sonographers, gaining work experience in lieu of an accredited degree can be very challenging. Accordingly, while State law does not create an absolute barrier to practicing for students from unaccredited programs, the practical effect can be the same for many students.

*Id.* at ¶ 59.

Further, at the time their statements were made, defendants HTI, Crowley, and Mohammed knew that their representations that the students would be able to take registry examinations upon graduation were false, or, defendants made such representation with a reckless disregard for truth or falsity. *Id.* ¶¶ 20-25, 61. Defendants also falsely represented that HTI's graduates are continually sought after by employers, that employers constantly contact HTI seeking its graduates, and that HTI offered job placement services. *Id.* ¶¶ 61-62. Defendants intended to have prospective students to rely upon these false statements in order to induce them to enroll in programs offered by HTI and pay tuition. *Id.* ¶ 71.

Plaintiffs relied on such representations to their detriment, enrolling in HTI's programs, paid tuition, and thereafter were unable to sit for required examinations, acquire a position in their chosen field, and suffered financial loss from the payment of tuition and debt from student loans. *Id.* at ¶¶ 26-28, 57, 74-75. Together, the above allegations make out a claim for putative

New Jersey Consumer Fraud Act violations, as well as putative common law fraud.  *Id.* at

Counts I and II.

In addition, defendants' actions breached the student enrollment contract by failing to

provide medical sonographer programs that were accredited by a national registry organization,

by failing to provide programs that met the minimum prerequisites to allow the students to sit for

the national registry examinations of the CCI and ARDMS, and by failing to ensure that a very

high percentage of the local hospitals or clinics where students performed their clinical hours

actually hired the students.  *Id.* ¶¶ 70-75;  *see id.,* Count IV.  In the alternative to the breach of

contract claim, plaintiffs submit that accepting tuition monies from plaintiffs has unjustly

enriched defendants as defendants failed to provide a benefit in return.  *Id.* at Count III.

## STANDARD OF REVIEW

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is granted only if, accepting all well-

pleaded allegations in the complaint as true and viewing them in the light most favorable to the

plaintiff, the court finds that a plaintiff has failed to set forth fair notice of what the claim is and

the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 *U.S.* 544, 555 (2007)

(citing *Conley v. Gibson,* 355 *U.S.* 41, 47 (1957)).  The Supreme Court further clarified this rule

in holding that a plaintiff's complaint will survive a motion to dismiss if it contains sufficient

factual allegations in the complaint to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal,* 129 *S. Ct.* 1937, 1949 (2009) (quoting *Twombly*, 550 *U.S.* at 570).  The

plausibility standard requires that the court "draw the reasonable inference [from the complaint]

that the defendant is liable for the misconduct alleged" and requires "more than a sheer

possibility" of the unlawful conduct.  *Id.* (citing *Twombly*, 550 *U.S.* at 556).  Although a court

must accept as true all factual allegations in a complaint, a court need not accept legal

conclusions or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting

*Twombly*, 550 *U.S.* at 555); *see also Phillips v. County of Allegheny*, 515 *F.3d* 224, 231 (3d Cir.

2008).   Furthermore, in evaluating this type of motion to dismiss, the Court only should consider

the complaint, exhibits attached to the complaint, matters of public record, and undisputedly

authentic documents – *if* the plaintiff bases her claims on those documents.  *Pension Benefit*

*Guar. Corp. v. White Consol. Indus.,* 998 *F.2d* 1192, 1196 (3d Cir. 1993).

      When determining whether the complaint meets the pleading requirements OF FED. R.

CIV. P. 8, a district court is to "draw upon its judicial experience and common sense" in making

this determination, and to consider the complaint as a whole and in context.  *Ashcroft v. Iqbal,*

129 *S. Ct.* at 1950.  The complaint "need only set forth sufficient facts to support plausible

claims," but need not be "as rich with detail as some might prefer."  *Fowler v. UPMC Shadyside,*

578 *F.3d* 203, 211-12 (3d Cir. 2009) (citing *Twombly*, 550 *U.S.* at 564 n. 8).  A court's analysis

should focus on the sufficiency of the plaintiff's pleadings, and not on what the plaintiff likely

will be able to prove during the litigation, which is an evidentiary issue.  *Id., 578 F.3d* at 213.

"Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of

whether a complaint fails to state a claim."  *Id.* (citing *Powell v. Ridge*, 189 *F.3d* 387, 394 (3d

Cir. 1999) (overruled on other grounds).  As the Third Circuit has recognized, "[e]ven post-

Twombly, [a] plaintiff is not required to establish the elements of a prima facie case but instead,

need only put forth allegations that 'raise a reasonable expectation that discovery will reveal

evidence of the necessary element[s].' " *Id.* (citing *Graff v. Subbiah Cardiology Assoc., Ltd.,*

No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

Ultimately, in reviewing a complaint under FED. R. CIV. P. 12(b)(6), the court only determines whether the plaintiff is entitled to offer evidence in support of her allegations, and not whether the plaintiff will ultimately prevail. *In Re Burlington Coat Factory Sec. Litig.,* 114 *F.3d* 1410, 1420 (3d Cir. 1997) (citing *Scheuer v. Rhodes*, 416 *U.S.* 232, 236 (1974)). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 *U.S.* at 556 (internal quotations omitted).

## LEGAL ARGUMENT

**I.    Defendants' motion to dismiss is moot and should be denied.**

FED. R. CIV. P. 15(a)(1)(B) provides that a party may amend its pleading once as a matter of course if it must respond to "[a] pleading … to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or [within] 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  A motion for leave to amend under FED. R. CIV. P. 15 is unnecessary if the amendment is filed within 21 days.  *Route 27, LLC, v. Getty Petroleum Marketing, Inc.*, No. 10-3080 (D.N.J. Mar. 29, 2011)(defendants' service of a motion under FED. R. CIV. P. 12(b)(6) allowed plaintiffs to file a *second* amended complaint as of right under FED. R. CIV. P. 15(a)(1)(B)).  Further, "[i]t is well settled that an amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot."  *American & Efird, LLC, v. Pittsfield Plastics Engineering*, Inc., No. 12-194 [ECF No. 20], (W.D.N.C. Jul. 12, 2012), citing *Young v. City of Mount Ranier*, 238 *F.3d* 567, 573 (4th Cir. 2001).  *See also Snyder v. Pascack Valley Hosp.*, 303 *F.3d* 271, 276, (3d Cir. 2002) ("an amended complaint supersedes the original version as providing the blueprint for the future course of the lawsuit").

In this case, defendants' served notice of a renewed motion to dismiss on July 9, 2013, along with a supporting brief.  [ECF No. 36].  In response, plaintiffs filed a Second Amended Complaint on July 30, 2013, [ECF No. 41], within the 21-day filing deadline under FED. R. CIV. P. 15(a)(1)(B).  Plaintiffs' initial Complaint was filed in state court, and subsequently amended prior to service on defendants.  Upon being served with the first Amended Complaint, defendants

9

removed the action under the Class Action Fairness Act.  [ECF No. 1].  Thus, the filing of

plaintiffs' Second Amended Complaint is the first such amendment in federal court, and the first

responsive amendment to a motion brought under FED. R. CIV. P. 12(b)(6).  Defendants' renewed

motion to dismiss was based on what is now an inoperative Complaint.

Accordingly, defendants' motion should be denied as moot as the Complaint at issue in

the motion has been superseded.  *See Harnish v. Widener Univ. School of Law*, No. 12-608 [ECF

No. 20] (D.N.J. Jul. 3, 2012) (denying defendant's motion to dismiss as moot).  Nevertheless,

although plaintiffs deny that the Court need even address the instant motion on the merits,

plaintiffs respond to the remainder of defendants' motion below.

## II.   Plaintiffs Sufficiently Pled a Claim Under CFA.

In enacting the New Jersey Consumer Fraud Act ("CFA"), the Legislature:

> recognized that the deception, misrepresentation and unconscion-
> able practices engaged in by professional sellers seeking mass
> distribution of consumer products frequently produce an adverse
> affect on large segments of disadvantaged and poorly educated
> people, who are wholly devoid of expertise and least able to
> understand or to cope with "sales oriented," "extroverted" and
> unethical solicitors bent on capitalizing upon their weakness, and
> who therefore most need protection against predatory practices.

*Kugler v. Romain,* 58 N.J. 522, 536 (1971).

The CFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense,

false promise, misrepresentation, or the knowing concealment, suppression, or omission of any

material fact […] in connection with the sale or advertisement of any merchandise or real estate."

*N.J.S.A.* 56:8-2.  "Merchandise" includes "any […] services or anything offered, directly or

indirectly to the public for sale."  *N.J.S.A.* 56:8-1(c).  "[U]nconscionability must be equated with

the concepts of deception, fraud, false pretense, misrepresentation, concealment and the like

10

which are stamped unlawful under [the CFA]. *Kugler v. Romain,* 58 *N.J.* at 544; *D'Ercole Sales v. Fruehauf Corp.*, 206 *N.J. Super*. 11, 30-31 (App. Div. 1985).

The CFA is designed to protect consumers from "sharp practices and dealings in the marketing of merchandise and real estate." *Lemelledo v. Benefit Mgmt. Corp.,* 150 *N.J.* 255, 263 (1997) (internal quotation omitted).  To effectuate this policy aim, New Jersey courts have invoked the CFA to root out sundry sordid business practices.  *Prof'l Cleaning & Innovative Bdg. Servs. v. Kennedy Funding,* 408 *Fed. Appx*. 566 (3d Cir. 2010).  The CFA's provisions have been interpreted broadly to accomplish its remedial provisions.  *Lemelledo v. Beneficial Mgmt. Corp.,* 150 *N.J.* at 264;  *Gennari v. Weichert Co. Realtors,* 148 *N.J.* 582, 604 (1997);  *Leon v. Rite Aid Corp.,* 340 *N.J. Super.* 462, 467 (App. Div. 2001).

### a. Defendants' conduct falls within the CFA.

A plaintiff states a claim under the CFA if she alleges (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.  *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 *N.J.* 372 (2007).  It is the "character of the transaction, not the identity of the purchaser, [that] determines whether the CFA is applicable." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 *F. Supp.2d* 557, 560 (D.N.J. 2002).

Here, plaintiffs have alleged unlawful conduct, an ascertainable loss calculated by the payment of tuition monies and student loan debt which would not otherwise have been undertaken, and a causal relationship between defendant's false representations and knowing omissions described above.

As part of their argument, defendants' state that (1) the programs offered by HTI are only offered to those with a bachelor's degree, and thus, that (2) the "limited segment of New Jersey

11

consumers who could purchase (and actually purchase) [sic] renders the training far from a product or service sold to the 'public at large' and 'sold to consumers in the popular sense.' " *See* Defendants' brief at 5-6 [ECF No. 36-1].  However, defendants have improperly presented these "facts" without an accompanying affidavit or point to some source allowed for consideration under FED. R. CIV. P. 12(b)(6) and should thus be disregarded.  Defendants argue that such unsubstantiated facts militate the finding that plaintiffs' purchase of the diagnostic medical sonography program was not a consumer transaction within the CFA.  However, contrary to these allegations, plaintiffs are composed of HTI's graduates from 2009-2011 who are New Jersey citizens, as set forth in the Complaint; the complaint does not limit the plaintiffs to those with four-year degrees as many students did not have the benefit of such a degree.  SAC at ¶ 36;  *see also Twombly*, 550 *U.S.* at 555 (holding that the court must accept all well-pleaded allegations as true for the purposes of a motion to dismiss analysis under Rule 12(b)(6)).

Nevertheless, solely to refute defendants' outlandish statement, plaintiffs provides the following:  The New Jersey Department of Education has recorded between approximately 30,000 and 40,000 bachelor degrees awarded from New Jersey institutions in each year from 2006-2012.[1]  This, of course, does not count those persons already holding bachelor's degrees from this and other states who are currently citizens of New Jersey.  Thus, the Court should reject defendants' baseless and unsupported representation that there is a small number of persons holding four-year degrees in this state as a reason for holding that the sale of HTI's training was not a consumer transaction.

_____

[1] Frequently Requested Statistical Tables | New Jersey Commission on Higher Education, http://www.state.nj.us/highereducation/statistics/index.html#CER, last accessed on Aug. 4, 2012.

The Court also should reject defendants' assumption that the purchase of a program offering training for a medical sonography technician is outside CFA by virtue of the situation's absence from the CFA's definitions.  Rather, the CFA has been applied successfully to a myriad of situations not explicitly found in the definitions accompanying the statute, such as the sale of merchandise and services to corporations.  *See Coastal Group v. Dryvit Sys.,* 274 *N.J. Super.* 171, 179 (App. Div. 1994) (allowing CFA claim brought by condominium developer against seller of prefabricated wall panels);  *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.,* 226 *N.J. Super.* 200, 209 (App. Div. 1988), *aff'd,* 118 *N.J.* 249 (1990) (upholding corporate plaintiff's CFA claim relating to purchase of a yacht);  *Hundred East Credit Corp. v. Eric Schuster Corp.,* 212 *N.J. Super.* 350, 355-57 (App. Div. 1986), *certif. denied,* 107 *N.J.* 60 (allowing corporate plaintiff's CFA claim in connection with purchase of computer peripherals).  In fact, service and merchandise, even if "expensive and within the grasp and/or needs of only a limited clientele," can fall within the protections of the CFA.  *Naporano Iron & Metal Co. v. American Crane Corp.,* 79 *F. Supp.2d* 494, 509 (1999) (holding that the sale of a crane to a corporation was covered under the CFA, similar to yachts, trucks, and computer parts, as merchandise available to the "general public").

Defendants rely upon *BOC Group, Inc. v. Lummus Crest, Inc.,* 251 *N.J. Super.* 271 (Law Div. 1990), for the argument that the defined improper practices promulgated by the New Jersey Division of Consumer Affairs should control the illegality of a sale.  In *BOC Group,* the trial court decided whether "merchandise" under the CFA encompasses a licensing agreement for a complex petroleum refining process.  The court concluded that the complex licensing agreement was not a "service" as defined by *N.J.S.A.* 56:8-1(c);  but rather, was an idea or a design.  *Id.* at 278.  The facts in *BOC Group* are thus entirely distinct from the present case, as the issue in this

13

case deals with the sale of career training.  Further, while the CFA and the New Jersey

Administrative Code specifically define some acts that are clear violations of the law, the New

Jersey Supreme Court has noted that "the CFA could not possibly enumerate all, or even most, of

the areas and practices that it covers without severely retarding its broad remedial power to root

out fraud in its myriad, nefarious manifestations."  *Lemelledo v. Beneficial Mgmt. Corp,* 150 *N.J.*

at 265.  Certainly, HTI's diagnostic medical sonography training is far more available to the

average consumer than a yacht or a construction crane such as those sold in *Perth Amboy Iron*

*Works* or *Naporano*.

Defendants rely heavily on the order of dismissal in *MacDonald v. Thomas M. Cooley*

*Law School,* 880 *F. Supp.2d* 785 (W.D. Mich. Jul. 20, 2012), *aff'd*, __ *Fed. Appx.* __, Nos.

12-2066/2130 (6th Cir. Jul. 30, 2013), to bolster their argument that plaintiffs' purchase in this

matter falls outside the New Jersey Consumer Fraud Act.  *MacDonald* is a Western District of

Michigan case that is not binding on this Court.  Even so, the facts in *MacDonald* are readily

distinguishable from the present case.  *MacDonald* arose the under the Michigan Consumer

Fraud Act, not the New Jersey CFA.  The defendant there is a law school accredited by the

American Bar Association ("ABA").[2]  There is no question that a student graduating from an

ABA-accredited school will be able to enter the practice of law after passing the bar exam, or

even that a successful graduate is eligible to apply and take the bar exam.  However, the

*MacDonald* plaintiffs did not allege that they could not become attorneys or take the bar exam,

since the plaintiffs in *MacDonald* were clearly able to work as lawyers:  "Plaintiff John T.

MacDonald is an attorney in Michigan, who opened his own law firm. [Four other plaintiffs]

14

have also opened their own law firms.  A few other plaintiffs have found meaningful legal work, while others did not." *Id.* at 8.  Instead, the *MacDonald* plaintiffs sought to sue the law school for the failure to find ideal employment: "[p]laintiffs 'intended' their legal employment to subsequently better their personal circumstances, these better 'personal circumstances' would be attained through their work as lawyers, i.e. a business." *Id. at *9.*  The *MacDonald* held that the purchase of a law school was a business purpose under the Michigan Consumer Fraud Act, as completing the study of law at an ABA-accredited school allowed the plaintiffs to enter the practice of law. *Id.[3]*

Despite being distinguishable on those grounds, a recent decision in this District declined to follow *MacDonald*'s reasoning for other reasons under similar facts.  Former students of Widener University School of Law sued the law school, claiming the school violated provisions of New Jersey and Delaware consumer fraud acts by posting on its website and providing to prospective students, along with evaluators, misleading and incomplete graduate employment rates.  *See Harnish v. Widener Univ. School of Law*, No. 12-608 [ECF No. 33] (D.N.J. Mar. 20, 2013).  In contrast to the court's summary denial of plaintiff's claims in *MacDonald*, the *Harnish* Court seemed to have no problem with finding that such allegations made out a plausible claim for violations of the New Jersey CFA and the Delaware CFA.  In doing so, the court rejected Michigan's "business purpose" exception as unique to that state, as the CFA does not distinguish

---

[2] Accreditation | Cooley Law School, http://www.cooley.edu/about/accreditation.html, last accessed on Aug. 4, 2013.

[3] Moreover, it is difficult, if not impossible, to assume that consumer fraud laws are easily comparable from state to state.  *See, e.g., Mazza v. American Honda Co.,* 666 *F.3d* 581 (9th Cir. 2012), where the court de-certified a national consumer fraud class action because of the difficulty of applying one state's consumer fraud laws nationwide.

between personal and business purposes, *id.* at 14, contrary to defendants' assertions that the purchase of career education is a business purpose and thus outside of the CFA. Certainly, there is nothing in plaintiffs' Complaint that suggests that career training was sought to further an established business.

Defendants attempt to use *MacDonald* as supporting law while simultaneously attempting to distinguish *Harnish* as inapplicable because, among other reasons, "the produce or service involved … was a law degree." Defendants' brief at 13 [ECF No. 36-1]. According to defendants, the purchase of a law school education has less of a "business character" than the career training at issue here since it is more "versatile;" however, defendants make this bald, unsubstantiated allegation without any support in the pleadings or an accompanying certification. To the contrary, the purchase of a legal education was explicitly found by the *Harnish* court to be a consumer purchase, despite any potential for a business use:

> The study of law is the learning of a profession. Widener's website promotes a professional school. Its function is to persuade a prospective law student to attend Widener in order to receive a degree in law … Widener was charging significant sums of money to teach Plaintiffs the practice of law.

*Harnish v. Widener Univ. School of Law*, No. 12-608, at *8, 10.

Inexplicably, defendants urge the adoption of the principles announced in *MacDonald* under a different state's law, while eschewing those announced in *Harnish*, in this District, on analogous facts and applicable law. The Court should not ignore the sound reasoning of the *Harnish* court as defendant's reasoning for the application of *MacDonald* is plainly unfounded.

In this case, plaintiffs allege that the education provided by HTI, contrary to defendants' false representations, was so deficient that they were unable to even take necessary examinations with the ARDMS or the CCI, two organizations which administer diagnostic medical

16

sonography registration examinations.  *See* SAC ¶¶ 20-25, 38, 44-45.  The present case is distinguishable from *MacDonald,* although plaintiff Ellithy has not been able to find work in her chosen field upon graduation from HTI, the primary complaint is that she, along with the putative class members, have been unable to take the threshold examinations under the ARDMS or the CCI by virtue of the deficient programs purchased from HTI and defendants' false representations that these programs enabled plaintiffs to sit for such examinations.  In other words, the conduct and harm at issue is *worse* than that complained of in *Harnish* and *MacDonald*.  However, both *Harnish* and the case at bar have common damages elements:  the payment of tuition which might otherwise not have been paid.

Further, plaintiffs in this case were not experienced commercial entities of relatively equal bargaining power that engaged in negotiated contracts with HTI.  *See Electric Mobility Corp. v. Bourns Sensors/Controls,* 87 *F. Supp.2d* 394, 399 (D.N.J. 2000).  Plaintiffs were instead "unsophisticated buyer[s], suffering a disparity of industry knowledge, victimized after being lured into [the purchases] through fraudulent, deceptive selling or advertising practices." *See D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 *N.J. Super.* at 23-24.  Plaintiffs were consumers of programs sold by HTI who paid tuition and gained nothing in return, were induced to enroll in a school which offered only sham programming, and were taken advantage of by a seller and its agents employing unconscionable businesses practices.  *See* SAC at ¶¶ 70-75.  Such facts make out a plausible claim under the CFA and raise the reasonable expectation that plaintiffs will be able to reveal evidence of the necessary elements of a CFA violation in discovery.  *See Fowler v. UPMC Shadyside, supra,* 578 *F.3d* at 213.

**b.  *The Learned Professional Exemption is Inapplicable to a Private Training Provider.***

The learned professional exception to the CFA is a "judicially crafted rule" that excludes certain transactions from the purview of the CFA "because they involve services provided by learned professionals in their professional capacity."  *Lee v. First Union Nat'l Bank,* 199 *N.J.* 251, 263 (2009).  This rule exists because professionals are subject to regulation within their professional organizations that may cause a conflict with the CFA.  *Id.* at 264.  The conflict must be *patent* and *sharp*, and cannot be "a mere possibility of incompatibility."  *Lemedello v. Benefit Mgmt. Corp., supra,* 150 *N.J.* at 270.

Defendants' brief does not even assert that regulations over private training providers provide the "mere possibility" of a conflict.  In fact, in a recent Appellate Division case involving the same defense counsel as here, the court held that the learned professional exception did not apply to a private training provider in reversing the trial court's grant of summary judgment to the provider.  *Suarez v. Eastern Int'l College,* 428 *N.J. Super.* 10 (App. Div. 2012), *certif. denied,* 213 *N.J.* 57 (2013).  In that case, the court declined to find a patent and sharp conflict between regulations governing a New Jersey private training provider, which offered medical sonography training much like HTI, and the CFA . *Id.* at 39.

In *Suarez*, Eastern International College ("Eastern") allegedly violated the CFA in connection with a sham diagnostic medical ultrasound technician program, much like the case at bar.  Plaintiff Suarez alleged that Eastern both omitted material facts in selling her career education, such as the fact that graduates would not be eligible to sit for ARDMS exams and that, because of this, graduates would "by and large, not be able to obtain work in their field." *Id.* at 24.  In addition, plaintiff Suarez alleged that Eastern affirmatively misrepresented that graduates would have the necessary qualifications "to obtain a job as a sonographer in hospitals

18

and clinics." *Id.*  The Appellate Division, in addition to declining to find that a private training provider was a "learned professional," that the alleged misstatements and omissions of defendants, coupled with plaintiff's proofs, were sufficient to reverse a finding of summary judgment below and allow the matter to proceed to a jury.  *Id.* at 40.

Nevertheless, defendants in the case at bar assert that HTI is an institution of higher learning and thus a de facto "learned professional;" but, they provide no factual basis whatsoever for this assertion, other than their brief.  In their brief, defendants attempt to defeat the application of *Suarez* and distinguish the case by describing an alleged comprehensive regulatory framework which consists of accreditation through ACCSC and a "second layer" of regular under New Jersey laws and rules promulgated by the New Jersey Department of Education and the Department of Labor and Workforce Development.  Defendants' brief, at 13 [ECF No. 36-1]. However, defendants ignore that this alleged comprehensive framework is identical to that in *Suarez*, which also alleged accreditation by ACCST and licensure by the New Jersey Department of Education.  *Id.* at 24.

Plaintiffs do note that there are regulations which apply to schools such as defendants; however, plaintiffs do not concede that such regulations allow for a finding of the leaned professional exception.  Notably, a private training provider such as HTI is defined as:

> a private vocational school, correspondence school, private training vendor, nonprofit agency, community based organization or any other provider of training whose educational programs are supported with public funds or through tuition charges to the general public.

*N.J.A.C.* 12:41-1.3.

In addition, a private training provider is defined as one that delivers training programs, which include (1) job search/job readiness, (2) academic remediation, (3) career major/occupational

19

skills, and (4) technical training instruction.  *N.J.A.C.* 12:41-5.1.  Clearly, the New Jersey

Department of Labor chose not to classify private training providers as institutions of higher

learning.  Further, as HTI is a private training provider authorized by the New Jersey Department

of Labor, it cannot also be a college or university regulated by the Higher Education Commission

of New Jersey.  In fact, one of the prerequisites for approval as a private training provider in

New Jersey is that the provider cannot be regulated by any other state governmental agency,

including the Higher Education Commission of New Jersey. [4]  Defendants cite no legal authority

that holds that a *private training provider* engaged in the sale of career training is either an

institution of higher learning or falls within the learned professional exception.

Furthermore, a recent case in this district, *Harnish v. Widener Univ. School of Law*, No.

12-608, declined to apply the learned professional exception to a law school.  In addition, the

Supreme Court of New Jersey denied certification in *Suarez*, 213 *N.J.* 57 (2013), and left its

holding undisturbed.

## III.    Plaintiffs' Fraud Claims meet the requirements of FED. R. CIV. P. 9(b)

FED. R. CIV. P. 9(b) provides:  "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and

other conditions of a person's mind may be alleged generally."  *See also Christidis v. First*

*Pennsylvania Mortg. Trust*, 717 *F.2d* 96, 99 (3d Cir. 1983).  The rule is meant provide

defendants with notice of the precise misconduct alleged and to protect defendants against

spurious allegations of immoral and fraudulent behavior.  *See In re Burlington Coat Factory Sec.*

---

[4] Eligibility Guidelines for Private Vocational Schools and Training Providers,
http://lwd.dol.state.nj.us/labor/forms_pdfs/coei/Eligibility.pdf, last accessed Aug. 4, 2013.

*Litig.,* 114 *F.3d* at 1418; *Eli Lilly & Co. v. Roussel Corp.,* 23 *F. Supp.2d* 460, 491 (D.N.J. 1998).

While allegations of date, time, and place are helpful in placing defendants on notice of the

conduct with which they are charged, "nothing in the rule requires them.  Plaintiffs are free to

use alternative means of injecting precision and some measure of substantiation into their

allegations of fraud."  *Seville Indus. Machinery v. Southmost Machinery*, 742 *F.2d* 786, 791 (3d

Cir. 1984).

A cause of action for common-law fraud has five elements:  (1) a material misrepresenta-

tion of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity;

(3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other

person; and  (5) resulting damages.  *Gennari v. Weichert Co. Realtors,* 148 *N.J.* at 610; *Walid v.*

*Yolanda for Irene Couture, Inc.,* 425 *N.J. Super.* 171, 180 (App. Div. 2012).

Plaintiffs have pleaded with precision the who, what, where, when, and how of these

fraudulent statements, as noted in more detail in the Statement of Facts, *supra*.  In this case, as

noted previously, plaintiffs purchased career education training as a result of defendants'

misrepresentations.  The representations were made by defendants Mohammad and Crowley and

other agents of HTI.  *See* SAC ¶¶ 20-25.  HTI, Mohammad, and Crowley represented that HTI's

programs would qualify the student graduates for national registry examinations and job

opportunities as certified technicians in the field of Diagnostic Medical Sonography.  *Id*.

Defendant Crowley falsely stated to plaintiffs that HTI was sufficiently accredited for students

who completed their course of study to be able to take the ARDMS examination.  *Id.* at ¶ 48.  At

the very least, the false statement about a presently existing fact, accreditation, satisfies the first

element of common law fraud.  HTI's agents further represented that job placement was

available, that the graduates were highly sought after by employers (*id.* at ¶¶ 23, 62), and that the

students and graduates were highly likely to be hired by the hospitals and clinics where the students had performed their clinical hours. *Id.* at ¶ 54. Plaintiffs reasonably relied on these false representations to their detriment, by costing the plaintiffs thousands in tuition and student loan debt. *Id.* ¶¶ 70-75. Thus, plaintiffs have sufficiently pled common law fraud.

In addition, the facts of this case meet the requirements of violating the CFA by affirmative acts. *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 17 (1994). In fact, a violation based on affirmative acts does not require proof of intent to commit or deceive. *Id.* at 17-18. An affirmative misrepresentation is "material to the transaction and [is] a statement of fact, found to be false, made to induce the buyer to make the purchase." *Suarez v. Eastern Int'l College,* 428 *N.J. Super.* at 31 (quoting *Gennari v Wiechert Co. Realtors*, 288 *N.J. Super.* 535). In this case, the false and misleading statements regarding accreditation, job placement, and the likelihood of gaining a position in plaintiffs' desired career were material, false, and induced plaintiffs to purchase HTI's programs. *See Suarez v. Eastern Int'l College,* 428 *N.J. Super.* 36-37 (denying summary judgment against plaintiff on consumer fraud claim on identical facts). In addition, defendants knowingly omitted material facts regarding plaintiffs eligibility to sit for the ARDMS and CCI examinations, and the amount of clinical hours necessary for each.

In the alternative to the two classes of violations described above, the New Jersey Supreme Court has recognized the "benefit-of-the-bargain" theory under the CFA; such a claim only requires that the consumer was misled into buying a product that was ultimately worth less to the consumer than the promised product. *Smajlaj v. Campbell Soup Co.,* 782 *F. Supp.2d* 84, 99 (D.N.J. 2011); *see also Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1 (2004).

It is clear that plaintiffs were misled into buying sham career training, receiving less than they bargain for. It is also clear than defendants intended for the plaintiffs to rely on such

22

misrepresentations.  The fraudulent conduct complained of is clear, specific, and has been

articulated appropriately in the second amended complaint.

Accordingly, the Court should deny defendants' motion to dismiss the fraud and

consumer fraud counts under FED. R. CIV. P. 9(b).

## IV.   Plaintiffs Properly Pled Unjust Enrichment and Breach of Contract Claims.

To state a claim for breach of contract, a plaintiff "must allege (1) a contract between the

parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party

stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507

*F.3d* 188, 203 (3d Cir. 2007).

In this case, a contract existed between HTI and its students that purported to allow the

students to gain necessary career training, take national registry examinations, and become

eligible to apply for entry-level positions in the field of medical diagnostic sonography, in return

for payment of tuition.  *See* SAC ¶¶ 70-75;  Count IV of the SAC.  Defendants' misrepresenta-

tions, omissions, and unconscionable business practices breached this contract, damaging

plaintiffs.  *Id*.  Thus, contracts exist between HTI and plaintiffs which have been breached.

In support of their argument that the breach of contract claim should be dismissed,

defendants attached a disclosure statement through which defendants purport to have advised

plaintiff Ellithy, and presumably others, of the deficient nature of HTI's educational program-

ming.  However, without admitting the form's authenticity, several problems arise upon a review

of this disclosure statement.  First, HTI apparently provided the disclosure statement during

orientation – *after* plaintiff Ellithy signed the student enrollment contract and likely paid monies

to HTI.  In fact, the alleged disclosure statement allegedly was received by plaintiff on

September 11, 2009, almost *two months after* the student enrollment contract was executed on

23

July 20, 2009.  Second, as defendants argue that the student enrollment contract was an integrated document and that no other terms can be considered, defendants' reliance upon the disclosure statement undercuts this argument entirely.  Thus, it is difficult for plaintiff, and presumably the Court, to understand precisely what theory of defense defendants rely upon in attempting to dismiss plaintiff's breach of contract action.

Nevertheless, it is clear that this supposed disclosure form is further evidence of plaintiffs' claims that HTI misled students into believing that they would be able to sit for necessary examinations and would be able to work in the diagnostic medical sonography field upon graduation.  *See* SAC at ¶ 46.  The disclosure form states that:  "successful completion of the Diagnostic Medical UltraSound Technologist Program prepares the graduate to apply for entry-level Diagnostic Medical Sonographer positions."  It further states that HTI "cannot control and predict any *future* prerequisite changes that *might* be implemented by the American Registry of Diagnostic Medical Sonographers (ARDMS), and therefore cannot and will not be held liable or responsible in any manner for *changes* that *might* be implemented by ARDMS or other any non-affiliated organization."  *See* Defuria Cert., Ex. C [ECF No. 36-2].  Thus, HTI apparently represented during orientation that its program was sufficient for certification at that time, although it attempted to absolve itself of future changes to ARDMS requirement.  Such a material misrepresentation, made *after* the execution of the student enrollment contract, is proof of bad faith conduct sufficient to make out a breach of contract claim.

To prove unjust enrichment in New Jersey, a plaintiff must show that "(1) at the party's expense; (2) the other party received a benefit; and (3) that it would be unjust for that party to retain the benefit without paying for it."  *Manisco v. Brother Int'l Corp*., 627 *F. Supp.2d* 494, 505 (D.N.J. 2009) (citing *In re K-Dur Antitrust Litigation,* 338 *F. Supp.2d* 517, 544 (D.N.J.

24

2004)).  The party asserting unjust enrichment also must show that it expected something in return for its expenses and the failure of the return benefitted the defendant.  The law of unjust enrichment "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  *Manisco,* 627 *F. Supp.2d* at 505.

In support of their request to dismiss the unjust enrichment claim, defendants cite multiple cases holding that an unjust enrichment claim cannot lie when there is an express written agreement.  While this may be true at some point in a theoretical sense, there is no rule that precludes alternative and inconsistent theories at this stage.  Further, it is quite clear that a litigant can plead quasi-contract claims in the alternative to contract-based claims.  *See Manisco, supra,* 627 *F. Supp.2d* at 505;  *Wells Fargo Bank Northwest N.A. v. American General Life Ins. Co.,* No. 10-1327 [ECF No. 69] (D.N.J. May 19, 2011) (in reviewing a proposed amended pleading adding a claim for unjust enrichment, *inter alia*, the Court held that the fact that the amending party also pled breach of contract was an insufficient basis to find the amendment futile).[5]

Further, other than the above basis for dismissal of the unjust enrichment claim, defendants fail to address plaintiffs' unjust enrichment claim on its merits.  Plaintiffs paid tuition and defendants failed to provide a benefit in return.  All of the defendants should not be permitted to retain tuition monies as a result.  Thus, as it is clear that inconsistent and alternative pleadings are permissible at this early stage, defendants' request to dismiss the unjust enrichment claim should be denied.

---

[5] The standard of review for assessing the futility of a proposed amended pleading is identical to the standard of review for a motion to dismiss under FED. R. CIV. P. 12(b)(6).  *See In re*

V.     **Defendants Have Impermissibly Included Allegations Outside the Pleadings In Their Arguments.**

Defendants' brief is replete with self-serving "facts" which have neither support in the brief, its attached documents, nor in a supporting affidavit.  *See supra,* part II.A; *see also* Defendants' brief at 10-11 (discussing the alleged accreditation through the Accrediting Commission of Career Schools and Colleges).  Such allegations contained in defendants' legal brief are completely inappropriate and should be disregarded by the Court.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 *F.2d* 1192, 1196 (3d Cir. 1993);  *Jarvis v. A & M Records,* 827 *F. Supp.* 282, 287 (D.N.J. 1993);  FED. R. CIV. P. 7.2.

VI.    **The New Jersey Consumer Fraud Act Allows Injunctive relief and Attorneys' Fees.**

Defendants argue that plaintiffs are not entitled to injunctive relief or attorneys' fees for the alleged failure to provide authority in plaintiffs' Complaint.  However, the CFA provides for injunctive relief against unlawful practices, *N.J.S.A.* 56:8-8, potential monetary penalties for violations of the act, *N.J.S.A.* 56:8-13, and also permits a prevailing plaintiff to recover treble damages, together with reasonable attorney's fees and costs of suit, *N.J.S.A.* 56:8-19.  If a plaintiff proves both an unlawful practice and an ascertainable act, both treble damages and an award of counsel fees are *mandatory.  Cox v. Sears Roebuck & Co.,* 138 *N.J.* at 24.

The CFA:

> not only sanctions but requires the award of treble damages to a successful plaintiff in an action under the Consumer Fraud Act […]. The [CFA] clearly speaks in the imperative.  [The] deterrent and punitive purposes of the Act would be substantially undermined by any judicial impairment of its primary weapon

---

*Burlington Coat Factory Sec. Litig.,* 114 *F.3d* at 1434;  *Massarsky v. General Motors Corp.,* 706 *F.2d* 111, 125 (3d Cir. 1983).

26

against those who engage in consumer fraud.

*Daaleman v. Elizabethtown Gas Co.,* 77 *N.J.* 267, 276 (1978) (Pashman, *concurring*).

Thus, defendants' argument regarding injunctive relief and attorneys' fees is without merit and should be dismissed.

**CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully requests that the Court deny defendants' motion to dismiss as moot as set forth herein.  In the alternative, plaintiffs request that the Court deny defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. (9)(b) and allow plaintiffs' claim to proceed.

<div style="margin-left:40%">

Respectfully submitted,
LESLIE A. FARBER, LLC

By:    *s/ Leslie A. Farber*

Leslie A. Farber
33 Plymouth Street, Suite 204
Montclair, New Jersey 07042

LAW OFFICE OF JEFFREY J. ANTONELLI, LTD.

By:    *s/ Jeffrey J. Antonelli*

Jeffrey J. Antonelli *(pro hac vice)*
30 North LaSalle Street, Suite 3400
Chicago, IL 60602
Tel. 312/201-8310

</div>

Dated:  August 5, 2013

Dated:  August 5, 2013

28