IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NANCY ELLITHY and all others similarly situated,** | Civil Action No. 2:12-cv-06209-CCC-JAD |
| *Plaintiffs,* | Hon. Claire C. Cecchi |
| v. | CIVIL ACTION |
| **HEALTHCARE TRAINING INSTITUTE, INC., a New Jersey for-profit corporation, BASHIR MOHAMMAD, M.D., JOY CROWLEY and JOHN DOE 1 THROUGH X (X being a number as yet unknown, being fictitious persons or corporations whose identities are presently unknown),** | RETURN DATE:  August 19, 2013 |
| *Defendants.* | |

---

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF RENEWED MOTION TO DISMISS

---

GACCIONE POMACO P.C.
524 Union Avenue
P.O. Box 96
Belleville, New Jersey 07109
Telephone: (973) 759-2807
Facsimile: (973) 759-6968

HOMER BONNER JACOBS
The Four Seasons Tower
1441 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:  (305) 350-5139
Telecopier:  (305) 372-1443

Attorneys for Defendants
Healthcare Training Institute, Inc.,
Bashir Mohammad, M.D., and Joy Crowley

Joseph A. DeFuria, Esq.
Peter W. Homer, Esq. (*pro hac vice*)

Of Counsel and On the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY ................................................................................................................. 1

ARGUMENT ............................................................................................................... 2

   I.   The Second Amended Complaint Was Improperly Filed And Should Be Stricken .... 2

   II.  Plaintiff's Second Amended Complaint Is Futile ............................................. 4

   III.   The CFA Does Not Apply to Plaintiff's Purchase of Career Education Training ... 6

      *a.*   *The School Did Not Offer Training "to the Public at Large"* ...................... 6

      *b.*   *The School's Career Education Training Is Not Similar to Any Transaction Expressly Subject to the CFA* ................................................................. 7

      *d.*   *Plaintiff's Alleged Lack of Sophistication is Irrelevant to the Court's Analysis of Plaintiff's Putative CFA Claim* ........................................... 11

   IV.   The Learned Professional Exemption Applies to the School ..................... 11

   V.  Plaintiff's Purported Fraud-Based Claims Fail to Meet the Heightened Specificity Required by Rule 9(b) ........................................................................................... 13

   VI.   Plaintiff's Purported Claims for Breach of Contract and Unjust Enrichment Must be Dismissed in Their Entirety ................................................................. 14

      *a.*   *Plaintiff's Putative Unjust Enrichment Claim Must be Dismissed* ............ 14

      *b.*   *Plaintiff's Putative Breach of Contract Claim Must Be Dismissed* ........... 16

      *c.*   *The Claims Against the Individual Defendants Must be Dismissed* .......... 16

   VII.  Plaintiff's Request for Attorneys' Fees and Injunctive Relief Is Improper ........... 16

CONCLUSION ........................................................................................................ 17

**CERTIFICATION OF SERVICE** ............................................................................... 18

**TABLE OF AUTHORITIES**

**Cases**

*BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271 (Law Div. 1990) .......................... 8

*Breiner v. Litwhiler*, 245 F. Supp. 2d 614 (M.D. Pa. 2003) *aff'd*, 98 F. App'x 75 (3d Cir. 2004). 2

*Cetel v. Kirwan Fin Group, Inc.*, 460 F.3d 494 (3d Cir. 2006) ...................................................... 6

*Coastal Group v. Dryvit Sys.*, 274 N.J. Super. 171 (App. Div. 1994)............................................. 8

*Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001) ..................................................................................... 9

*East Coast Office Systems v. Citicorp Vendor Finance, Inc.*,
    Civ. No. 06-25 (GEB), 2006 WL 3257091 (D.N.J. Nov. 9, 2006)........................................... 11

*Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004)........................................................................ 14

*Gourdine v. Felician College*, 2006 WL 2346278 (N.J. App. Div.. 2006) .................................. 12

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010)................. 5

*Harnish v. Widener Univ. School of Law*,
    Civ. No. 2:12-cv-00608, 2013 WL 1149166 (D.N.J. March 20, 2013)..................................... 9

*Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675 (7th Cir. 2006) ...................................... 5

*Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super 350 (App. Div. 1986)........... 8

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ...................................................... 14

*Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719 (D.N.J. 2008)........................................ 9

*Kugler v. Romain*, 58 N.J. 522 (1971) ........................................................................................... 7

*MacDonald v. Thomas M. Cooley Law School*, 880 F.Supp.2d 785 (W.D. Mich. 2012),
    *aff'd*, Nos. 12–2066, 12–2130, 2013 WL 3880201 (6th Cir. July 30, 2013)................. 8, 10, 11

*Macedo v. Dello Russo*, 178 N.J. 340 (2004) .......................................................................... 11, 12

*Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840 (3d Cir. 1973) ............. 17

*Oswell v. Morgan Stanley Dean Witter & Co., Inc.*,
    No. 06–5814, 2007 WL 1756027 (D.N.J. June 18, 2007)........................................................ 15

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981)........ 12

*Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*,
   226 N.J. Super. 200 (App. Div. 1988) ................................................................ 8

*Polizzi Meats, Inc. v. Aetna Life & Ins. Co.*, 931 F.Supp. 328 (D.N.J. 1996) ............................ 12

*Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990) .................................................. 17

*Route 27, LLC v. Getty Petroleum Mktg., Inc.*,
   Civil No. 10-3080, 2011 WL 1256618 (D. N.J. March 30, 2011) .............................. 3

*Royale Luau Resort, LLC v. Kennedy Funding, Inc.*,
   CIV. A. 07-1342 HAA, 2008 WL 482327 (D.N.J. Feb. 19, 2008) ............................ 14

*Schlossman's, Inc. v. Redcliff*, 70 A.2d 493 (N.J. 1953) ................................................ 16

*Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) ........................................................... 2

*Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84 (D.N.J. 2011) ...................................... 14

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938) ................................. 4

*Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013) ........................................... 4

*VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994) ......................................... 15

*Watiti v. Walden University*, 2008 WL 2280932 (D.N.J. 2008) ....................................... 12

**Statutes**

M.C.L. § 445.901, *et seq.* ................................................................................ 9

N.J.S.A. 56:8-1, *et seq* .................................................................................. 9

**Rules**

Rule 9, Fed. R. Civ. P. ............................................................................... 14, 17

Rule 15, Fed. R. Civ. P ................................................................................ 2, 4

## SUMMARY

Defendants Healthcare Training Institute, Inc. ("HTI"), Bashir Mohammed, M.D., and Joy Crowley (collectively, the "School") submit this reply in further support of their Renewed Motion to Dismiss [D.E. 36] the First Amended Complaint filed by Plaintiff Nancy Ellithy ("Plaintiff").

After the School filed its Renewed Motion to Dismiss, Plaintiff improperly filed her Second Amended Complaint without either leave of Court or the School's consent. Inexplicably, Plaintiff then responded to the School's Renewed Motion to Dismiss as if it were filed against the later-filed Second Amended Complaint. *See* Plaintiff's Response [D.E. 43]. Plaintiff's Second Amended Complaint should be stricken as an impermissible filing and the Court should decide the School's Renewed Motion to Dismiss as it applies to the operative complaint—the First Amended Complaint. Alternatively, if the Court decides to accept Plaintiff's Second Amended Complaint, the School should be permitted to file a new motion to dismiss that addresses the amended pleading.

Plaintiff's Response offers no meaningful basis to avoid dismissal. This is because the New Jersey Consumer Fraud Act ("CFA") does not apply to Plaintiff's purchase of career education training and, even if it did, such a claim is barred by the "learned professional" exemption. The First Amended Complaint also fails to meet basic federal pleading standards and, notwithstanding these deficiencies, fails to state a cause of action for breach of contract and unjust enrichment or set forth any entitlement to injunctive relief and attorney's fees. For the reasons herein, and those in the Renewed Motion to Dismiss, Plaintiff's First Amended Complaint should be dismissed with prejudice in its entirety and the Second Amended Complaint should be stricken.

1

**ARGUMENT**

**I.    The Second Amended Complaint Was Improperly Filed And Should Be Stricken**

As a preliminary matter, Plaintiff's Second Amended Complaint was improperly filed and should be stricken because Plaintiff failed to obtain either leave of Court or the School's consent.   Plaintiff argues that she did not need the Court's permission to file the Second Amended Complaint under Fed. R. Civ. P. 15(a)(1)(B).   This argument fails for two reasons. First, Rule 15 only allows a plaintiff to amend <u>once</u> as a matter of course and this is Plaintiff's <u>second</u> amendment.   Second, Rule 15 requires Plaintiff to file the amended complaint within 21 days after a motion to dismiss, and Plaintiff filed her Second Amended Complaint almost a year after the School filed its motion to dismiss the First Amended Complaint.

Fed. R. Civ. P. 15(a)(1) states:

(1) *Amending as a Matter of Course.* A party may amend its pleading **once** as a matter of course within:… (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(emphasis added).   Rule 15 specifically limits amendments without leave to one time.   As the Third Circuit has stated, "[a]fter amending once or after an answer has been filed, the plaintiff may amend <u>only</u> with leave of court or the written consent of the opposing party."   *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *see also Breiner v. Litwhiler*, 245 F. Supp. 2d 614, 622 (M.D. Pa. 2003) *aff'd*, 98 F. App'x 75 (3d Cir. 2004) ("Rule 15(a) of the Federal Rules of Civil Procedure authorizes a party to amend a pleading without leave of court under limited circumstances and *only once.* 'Otherwise a party may amend the party's pleading *only* by leave of court or by written consent of the adverse party.') (internal citations omitted) (emphasis in original).

Plaintiff tries to argue around the plain language of Rule 15, which clearly limits amendments to "once," by claiming that her first amendment does not count because it was done in state court and before the original complaint was served. But nothing in the plain language of the rule indicates that a party may amend one time per court, or one time after the complaint is served.

Second, although the School recently moved to dismiss the First Amended Complaint, this was the School's renewed motion to dismiss [D.E. 36]. The School's motion to dismiss was originally filed on October 12, 2012 (well over 21 days ago), was fully briefed by all parties, and was set for hearing. However, the court administratively terminated the School's motion to dismiss (with permission to re-file it) so that it could address Plaintiff's then pending motion to remand before considering the motion to dismiss. Therefore, even if Plaintiff had not already amended once (and she has), in order to file an amended complaint without leave she would have had to do so by October 31, 2012, 21 days after the School filed its original motion to dismiss.

Plaintiff relies on a single, unpublished opinion in supposed support of her choice to file her Second Amended Complaint without first obtaining leave of court, *Route 27, LLC v. Getty Petroleum Mktg., Inc.*, Civil No. 10-3080, 2011 WL 1256618 (D. N.J. March 30, 2011). However, in that case, the plaintiff filed an amended complaint within 21 days of the defendant filing a motion to dismiss for the first time. *Id.* at *2. Here, the School recently filed its Renewed Motion to Dismiss for the second time; it was originally filed almost a year ago. Moreover, while the *Route 27* court noted in *dicta* that it did not believe the plaintiff needed to obtain leave to file the amended complaint, that plaintiff did seek leave and the defendant did not oppose it. *Id.* at *3.

3

Here, because Plaintiff's Second Amended Complaint was filed without either leave of court or the School's written consent, and because Fed. R. Civ. P. 15(a)(1)(B) does not apply, the Second Amended Complaint should be stricken.  However, should the Court decide to accept the defective filing, the Court should allow the School an opportunity to file a new motion to dismiss that specifically addresses the allegations made in the Second Amended Complaint.

## II.     Plaintiff's Second Amended Complaint Is Futile

The purpose for Plaintiff's Second Amended Complaint is clear—to avoid this Court's jurisdiction under CAFA.  In fact, Plaintiff had previously indicated her intent to amend the class definition so as to avoid CAFA jurisdiction.  *See* July 9, 2013 Letter from Leslie Farber to Magistrate Judge Dickson [D.E. 37].  The Second Amended Complaint also specifically claims that "it may divest the Court of jurisdiction under the mandatory abstention provisions of the CAFA."  But this is false.  An amendment to the class definition cannot divest this Court of jurisdiction.

The U.S. Supreme Court has previously explained that removal jurisdiction is determined as of the date of the filing of the complaint.  *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (citing *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 390 (1998)) ("For jurisdictional purposes, our inquiry is limited to examining the case "as of the time it was filed in state court"'); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.").  Moreover, the Seventh Circuit, relying on a report from the Senate Judiciary Committee, has specifically held that where, as here, the Court's jurisdiction is under CAFA, a plaintiff cannot avoid federal jurisdiction by defining the putative class in a certain way after the case has been properly removed:

[I]t is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (e.g., the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state). Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members. The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot 'oust' the federal court of jurisdiction. **While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.**

*Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 681 (7th Cir. 2006) (citing S. Rep. 14, 109th Cong. 1st Sess. 43 (2005), 2005 U.S.C.C.A.N. 3, 41) (emphasis added).  Since the instant action has already been properly removed, Plaintiff cannot now try to avoid federal jurisdiction by redefining her purported class.  *Id.*

Plaintiff also attempts to cure the pleading deficiencies in her First Amended Complaint by adding additional allegations about supposed misstatements made by the School.  However, these changes are insufficient as Plaintiff still fails to allege with the requisite specificity her allegations against HTI.  *See infra* Sec. V.

Because Plaintiff's Second Amended Complaint will <u>not</u> divest this Court of jurisdiction, and because it does not cure Plaintiff's failure to plead her fraud-based claims with the requisite specificity, the Second Amended Complaint is futile and should be stricken.  *See e.g. Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (denying motion for leave to amend where amendment was futile).

III.    **The CFA Does Not Apply to Plaintiff's Purchase of Career Education Training**

a.    *The School Did Not Offer Training "to the Public at Large"*

"[A]s New Jersey courts repeatedly made clear, the CFA seeks to protect consumers who purchase goods or services <u>generally sold to the public at large</u>[.]" *Cetel v. Kirwan Fin Group, Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (emphasis added and internal quotations omitted).  As detailed in the School's Renewed Motion to Dismiss [D.E. 36], the School did not sell its specialized career training to the "public at large."  Enrollment in HTI's medical sonography program (the program Plaintiff was enrolled in and completed) is limited to individuals who first obtained a bachelor's degree, and then desired to obtain advanced certification in the field of medical sonography.  This is a significantly narrowed segment of the public as compared to the "public at large."  Since HTI does not sell its services to the "public at large," the CFA is inapplicable here.

In a weak attempt to refute this, Plaintiff touts alleged facts (not alleged in her First Amended Complaint) that are irrelevant to this Court's analysis as to whether the CFA applies.  Specifically, Plaintiff claims that career education training is subject to the CFA because there are between 30,000 to 40,000 Bachelor degrees awarded in New Jersey in each of the past five years.  Even if true, this is a meaningless statistic because it does not speak to whether these figures represent the "public at large."

As a threshold matter, this statistic does not relate to the limited segment of individuals interested in enrolling in HTI's specialized post-secondary career training programs.  This statistic also ignores the self-evident fact that, because of the limited segment of the public who could conceivably enroll in the medical sonography program, HTI cannot engage in the type of "mass distribution" of its services contemplated by the New Jersey legislature in rendering the

CFA applicable to certain services. *See, e.g., Kugler v. Romain*, 58 N.J. 522, 536 (1971) (observing that the New Jersey legislature recognized that the CFA's reach was intended to be limited to "professional sellers <u>seeking mass distribution of many types of consumer products</u>") (emphasis added).

Nevertheless, the raw number of individuals who receive Bachelor degrees in New Jersey does not determine whether the CFA applies. Rather, the question is whether School's career education training is being offered for sale to the "public at large," and the Court is to look at the status of the parties and the nature of the transaction itself. *See Cetel*, 460 F.3d at 514 ("[T]he CFA is not intended to cover every transaction that occurs in the marketplace … its applicability is limited to consumer transactions which are defined by <u>both the status of the parties and the nature of the transaction itself</u>.") (emphasis added and internal quotations and citations omitted). Under this analysis, Plaintiff's touted statistics are irrelevant. The pool of HTI's potential students in its sonography program is limited to a small segment of the public who have at least a Bachelor's degree and are actually interested in pursuing the School's specialized career education training. This demonstrates that the School's sonography program is not offered for sale "to the public at large" and renders the CFA inapplicable.

### b. *The School's Career Education Training Is Not Similar to Any Transaction Expressly Subject to the CFA*

It is undisputed that the sale of career education training is not expressly governed by the CFA. Plaintiff nevertheless argues that the CFA must apply to the School because the statute has been applied to other transactions that are not expressly prohibited. Plaintiff's argument is misguided. While the CFA has undoubtedly been extended to some transactions that are not expressly prohibited under the statute, this is not the end of the Court's analysis. This is because the CFA "can be construed under the doctrine of *ejusdem generis* as a comprehensive definition

intended to incorporate other products or services <u>similar in nature</u> to those enumerated [by the Division of Consumer Affairs]." *See BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271, 280 (Law Div. 1990) (emphasis added). Here, there are no enumerated transactions under the CFA or its related regulations that bear <u>any</u> similarity whatsoever to the purchase of career education training, and Plaintiff fails to identify one in her Response.

Instead, Plaintiff relies on several cases where the CFA was applied to transactions that are not expressly defined by the CFA. But those cases are completely distinguishable. All of Plaintiff's touted cases concern transactions that are available to <u>anyone</u> (*i.e.* the public at large), and are only limited by the fact that the transactions are expensive and may be unaffordable to many individuals. *See, e.g., Coastal Group v. Dryvit Sys.*, 274 N.J. Super. 171 (App. Div. 1994) (purchase of expensive prefabricated wall system for condominium); *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226 N.J. Super. 200 (App. Div. 1988) (concerning purchase of expensive yacht); *Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super 350 (App. Div. 1986) (purchase of computer system). These cases are not instructive here because the barriers to enroll in HTI's sonography program are not limited to financial resources, but are undisputed educational prerequisites that drastically limit the segment of the public that could conceivably enroll in the program. This is an additional reason the CFA does not apply to the instant transaction.

### c.  *MacDonald Supports Dismissal of this Action*

Plaintiff also fails in her Response to meaningfully distinguish the substance of *MacDonald v. Thomas M. Cooley Law School*, 880 F.Supp.2d 785 (W.D. Mich. 2012), *aff'd*, Nos. 12–2066, 12–2130, 2013 WL 3880201 (6th Cir. July 30, 2013). *MacDonald*, which is now the controlling law of the Sixth Circuit, holds that the purchase of a legal education is not a

"consumer transaction" subject to Michigan's version of the CFA, the Michigan Consumer Protection Act ("MCPA").  As recognized by this District, the MCPA is broader in scope than the CFA because it extends to acts and practices "in the conduct of trade or commerce."  *See, e.g., Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719, 726 (D.N.J. 2008).  *MacDonald* should therefore guide this Court's decision concerning the application of the CFA to analogous career education training.

To avoid this, Plaintiff argues that *MacDonald* is not controlling on this Court.  Plaintiff also touts an opinion from this District, *Harnish v. Widener Univ. School of Law*, Civ. No. 2:12-cv-00608, 2013 WL 1149166 (D.N.J. March 20, 2013), which distinguished *MacDonald* and found the CFA applicable to the purchase of legal education.  Plaintiff is correct that *MacDonald* is not binding here.  But neither is *Harnish*. *See e.g. Doe v. Delie*, 257 F.3d 309, FN 10 (3d Cir. 2001) ("We have held that district court decisions do not establish the law of the circuit, and are not even binding on other district courts within the district.").

The School respectfully disagrees with *Harnish*, which mistakenly interpreted the CFA as being broader in scope than the MCPA.  The School maintains that the MCPA, which applies to acts and practices "in the conduct of trade or commerce," is actually broader in scope than the CFA, which "is not intended to cover every transaction that occurs in the marketplace," *Compare* N.J.S.A. 56:8-1, *et seq., with* M.C.L. § 445.901, *et seq.; Cetel.*, 460 F.3d at 514. Nevertheless, the facts in *Harnish* are distinguishable because the product or service involved there was a law degree, which has far broader use than the narrow career training offered in HTI's sonography program.  HTI's  program has indisputably more "business" character than a general legal education, which has more versatility for personal and consumer use.

9

Plaintiff also attempts to erroneously distinguish *MacDonald* because the law school at issue was regulated by American Bar Association ("ABA") accreditation.  This distinction is meaningless because the *MacDonald* court did not even consider whether the law school was accredited in its finding that legal education was not a "consumer transaction."[1]  Moreover, because in the instant dispute HTI is subject to several layers of regulation, including by its institutional accreditor the Accrediting Commission of Career Schools and Colleges ("ACCSC"), Plaintiff's distinction actually supports that HTI is not subject to the CFA.

Plaintiff then nonsensically claims that *MacDonald* is distinguishable because it concerned "ideal employment."  However, nowhere in *MacDonald* does the term "ideal employment" appear, and the *MacDonald* court did not find that the law graduates' ideal employment was relevant in any respect to its determination whether the MCPA was applicable to the purchase of a legal education.  In fact, rather than focusing on the subjective desires of the graduates, the *MacDonald* court determined that the objective purpose in acquiring legal education was to obtain employment as lawyers, which the *MacDonald* court reasoned was for a primarily business purpose and not a consumer transaction.[2]  And, even if *MacDonald* based its decision on "ideal employment" (which it did not), this has no application here because, under New Jersey law, the Court must focus on the character of the transaction (i.e. career education

---

[1] Indeed, nowhere in *MacDonald* is it even discussed that the ABA is the accrediting body for the law school.  What is more, Plaintiff's citation to a website as supposed evidence that the law school is accredited by the ABA is outside of the four corners of the Complaint and should not be considered by the Court.

[2] *Id.*, at *5 ("Plaintiffs did not purchase a Cooley legal education so that they could leisurely read and understand Supreme Court Reports ...Plaintiffs 'intended' their legal employment to subsequently better their personal circumstances, these better "personal circumstances" would be attained through their work as lawyers, i.e. a business.").

training) and not on Plaintiff's subjective desires.[3]  Plaintiff enrolled in HTI to advance her

professional ambitions in the health care field—an indisputable business purpose.  *See* First

Amended Complaint, ¶ 20.  Plaintiff's enrollment is therefore not a "consumer transaction"

under the CFA.

### d. Plaintiff's Alleged Lack of Sophistication is Irrelevant to the Court's Analysis of Plaintiff's Putative CFA Claim

Plaintiff also tries to avoid dismissal by claiming that she is an "unsophisticated buyer[]"

"and is not [an] experienced commercial entit[y]" that engaged "in negotiated contracts with

HTI."  Plaintiff then claims that her allegations supposedly "raise the reasonable expectation that

Plaintiffs will be able to reveal evidence of the necessary elements of a CFA violation in

discovery."  These types of allegations, which were rejected in *MacDonald*,[4] are irrelevant

because they do not speak to the character of the transaction at issue, and do not present any

meaningful basis to allow an otherwise improper CFA claim to proceed against the School

## IV.  The Learned Professional Exemption Applies to the School

The conduct of learned professionals lies beyond the reach of the CFA so long as the

learned professionals are operating in their professional capacities.  *Macedo v. Dello Russo*, 178

N.J. 340, 435-436 (2004).  Here, even if Plaintiff's purchase of career education training is

subject to the CFA (which it is not), Plaintiff's putative CFA claim is nevertheless barred by the

"learned professional" exemption.  Plaintiff argues that this exemption does not apply because:

---

[3] *See, e.g., East Coast Office Systems v. Citicorp Vendor Finance, Inc.*, Civ. No. 06-25 (GEB), 2006 WL 3257091, at *3 (D.N.J. Nov. 9, 2006) ("Courts have held that it is the character of the transaction rather than the identity of the purchaser which determines if the CFA is applicable.") (internal quotations and citations omitted).

[4] The *MacDonald* court rejected the law graduates' putative claims despite allegations that "Cooley is primarily marketing its product to naive, relatively unsophisticated consumers—many of whom are barely removed from college—who are often making their first 'big-ticket' purchase."  2012 WL 2994107, at *3.

(1) the School does not allege that it is regulated in way that creates a "patent" and "sharp" conflict with the CFA and (2) the School is not regulated by the Higher Education Commission ("HEC") of New Jersey.  However, Plaintiff offers no authority (because there is none) that the School must be regulated by the HEC to fall within the learned professional exemption.  What matters instead is that the School is governed by a regulation scheme that displaces the CFA.[5] Here, the School is regulated by its institutional accreditor ACCSC, and is even subject to an additional layer of state regulation by the New Jersey Department of Education and the New Jersey Department of Labor and Workforce Development.  It is for this reason that the learned professional exemption applies here and requires dismissal of Plaintiff's putative CFA claim.

Plaintiff also relies on *Suarez v. Eastern Int'l College*, 428 N.J. Super. 10 (App. Div. 2012) for the proposition that the learned professional exception is supposedly inapplicable to the School.  *Suarez* is not controlling on this Court. When the District of New Jersey "sits in diversity, it is bound by the decisions of [the] highest court of the state whose substantive law this court must apply."  *Polizzi Meats, Inc. v. Aetna Life & Ins. Co.*, 931 F.Supp. 328, 340 (D.N.J. 1996).  With respect to rulings of the lower New Jersey appellate courts, "[t]his court is guided, but not bound, by the rulings of the lower New Jersey appellate courts, which may provide indicia of how the state's highest court might decide an issue."  *Id.* (internal quotations omitted); *see also Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir. 1981) ("In the absence of an authoritative pronouncement from the state's highest

---

[5] *See Macedo*, 178 N.J.at 346 ("advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA but subject to comprehensive regulation by the relevant regulatory bodies and to any common-law remedies that otherwise may apply"); *see also Watiti v. Walden University*, 2008 WL 2280932 (D.N.J. 2008): *Gourdine v. Felician College*, 2006 WL 2346278 (N.J. App. Div.. 2006).

court, the task of a federal tribunal is to predict how that court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions…").

*Suarez* is also distinguishable. In *Suarez* the Superior Court of New Jersey, Appellate Division, found the learned professional exemption inapplicable because the defendant "identified no regulatory body that defines uniform standards for the services it provides or its activities as a for-profit training school, let alone regulation that would present a 'patent and sharp' conflict with the application of the CFA." 428 N.J. Super. at 39. This is not like the instant case, where the School has advised the Court of a comprehensive regulatory framework that governs HTI's conduct, starting with HTI's institutional accreditor ACCSC, and with a second layer of regulation under New Jersey law and the rules promulgated by the New Jersey Department of Education and the New Jersey Department of Labor and Workforce Development. *See* Renewed Motion to Dismiss [D.E. 36], at p 11. What is more, a District of New Jersey decision that is more analogous to the instant dispute unambiguously holds that the learned professional exception applies to educators, such as the School. *See, e.g., Watiti v. Walden Univ.*, 2008 WL 2280932 (D.N.J. 2008).

For all these reasons, this Court must, as a matter of law, dismiss Plaintiff's putative CFA claim against the School.

## V.  **Plaintiff's Purported Fraud-Based Claims Fail to Meet the Heightened Specificity Required by Rule 9(b)**

Plaintiff's putative fraud-based claims fail to meet the heightened specificity required by Rule 9(b), Fed.R.Civ.P. Indeed, the fact that Plaintiff added several paragraphs describing alleged misstatements in her Second Amended Complaint is indicative of the deficiencies of the First Amended Complaint. For all the reasons elaborated in the School's Renewed Motion to Dismiss, the fraud-based claims in the First Amended Complaint should be dismissed because it

13

fails to provide specific and materials details—the "who, what, when, where, and how"—for each alleged fraudulent statement at issue.[6]   However, even Plaintiff's Second Amended Complaint fails to provide the specific details required as to HTI.

In her Response, Plaintiff relies on *Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84 (D.N.J. 2011), and *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1 (2004), for the proposition that she supposedly does not need to provide further specificity in connection with her CFA claim because the New Jersey Supreme Court recognizes the "benefit of the bargain" theory. However, *Smajlaj* and *Furst* do not support this theory and only discuss the benefit-of-the-bargain theory in connection with the requirement to plead damages under the CFA. *Smajlaj*, 782 F.Supp.2d at 99; *Furst*, 182 N.J. at 11-14. And, even in *Smajlaj*, the court specifically noted that Rule 9(b) applies to CFA claims based on an alleged misrepresentation or omission (as is the case here). 782 F.Supp.2d at 98. Neither case obviates Plaintiff's obligation to plead her purported CFA claim with the requisite specificity under Rule 9(b) and provide specific information regarding each of the alleged misstatements at issue for each defendant. However, the First Amended Complaint does neither, and Plaintiff's fraud-based claims must be dismissed.

**VI.   Plaintiff's Purported Claims for Breach of Contract and Unjust Enrichment Must be Dismissed in Their Entirety**

### a.  *Plaintiff's Putative Unjust Enrichment Claim Must be Dismissed*

Plaintiff's purported unjust enrichment claim must be dismissed because the subject matter of the claim is covered by an express contract between Plaintiff and HTI. *See, e.g., Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, CIV. A. 07-1342 HAA, 2008 WL 482327 (D.N.J. Feb. 19, 2008) (dismissing unjust enrichment claims because "it is clear that the subject

---

[6] *See, e.g., In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (Rule 9(b) "requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story").

matter of this dispute is covered by an express contract").  Plaintiff argues that dismissal of this claim would be premature because she is allowed to plead alternative theories.  However, while a litigant in theory <u>could</u> potentially plead unjust enrichment as an alternative claim, Plaintiff cannot do so here.  This is because Plaintiff specifically incorporates her written agreement into the allegations of her claim.[7]  Plaintiff also incorporates her entire putative unjust enrichment claim into her breach of contract claim.  *See* First Amended Complaint, at Count IV, ¶ 1. Consequently, Plaintiff's alleged unjust enrichment claim is not an independent cause of action from her putative breach of contract claim and cannot stand.[8]

Plaintiff's putative claim for unjust enrichment must also be dismissed because Plaintiff failed to allege that she provided a benefit that enriched the School <u>beyond</u> its contractual rights.[9] Here, Plaintiff only alleged that "Defendants have been unjustly enriched by accepting the Students' tuition and fees without providing a benefit in return."  First Amended Complaint, at Count III, ¶ 2.  However, the tuition amounts alluded by Plaintiff were due under the Enrollment Agreement (referenced in the Complaint), and Plaintiff failed to allege another benefit conferred beyond those provided under the contract.  Plaintiff's claim must therefore be dismissed.

---

[7] *Compare* First Amended Complaint, Third Count, ¶ 1 (incorporating all allegations of the First and Second Counts) *with* First Amended Complaint, First Count, ¶ 8 ("Each of the Students signed an 'Student Enrollment Contract' with HTI.  The Students entered into enrollment agreement with HTI…").

[8] *See e.g. Oswell v. Morgan Stanley Dean Witter & Co., Inc.,* No. 06–5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007) (dismissing unjust enrichment claim "because an unjust enrichment claim must be independent of a breach of contract claim and a Plaintiff may not bring an unjust enrichment claim while also pleading the existence of a contract.")

[9] The "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant <u>beyond its contractual rights</u>."  *VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519, 526 (N.J. 1994) (emphasis added).

### b.   Plaintiff's Putative Breach of Contract Claim Must Be Dismissed

Plaintiff's arguments to save her breach of contract claim are baseless.  It still remains unknown, even after her Response, whether Plaintiff's breach of contract claim concerns Plaintiff's written agreement with HTI, or whether it concerns some other purported oral agreement.  In either case, Plaintiff's claim must be dismissed.  To the extent the claim is based on a written agreement, Plaintiff failed to identify any provision of the contract that has been breached.  And, to the extent the claim is based on some other alleged oral agreement or statement, the claim fails because the written Enrollment Agreement is fully integrated and cannot be altered by other supposed oral statements.[10]  For these reasons, Plaintiff's putative claim for breach of contract must be dismissed in its entirety.

### c.   The Claims Against the Individual Defendants Must Be Dismissed

To the extent Plaintiff's putative claims for unjust enrichment and breach of contract are allowed to remain (and they should be dismissed), the Court must nevertheless dismiss these claims against individual defendants Joy Crowley and Bashir Mohammad, M.D.  Plaintiff's Response completely ignores the arguments that Plaintiff's putative claims must be dismissed against the individual defendants, likely because Plaintiff has no meaningful response. Accordingly, for the reasons discussed herein and in the School's Motion to Dismiss, the Court should dismiss Plaintiff's putative claims against the individual defendants.

### VII.   Plaintiff's Request for Attorneys' Fees and Injunctive Relief Is Improper

Plaintiff's First Amended Complaint seeks both injunctive relief and attorney's fees (or "counsel fees") in connection with all four of her purported claims.  Plaintiff argues in her

---

[10] See Enrollment Agreement, attached to the Renewed Motion to Dismiss as Exhibit B, at p. 2; *Schlossman's, Inc. v. Redcliff,* 70 A.2d 493, 495 (N.J. 1953) (parol evidence is not to be utilized to vary or add to terms in a complete written contract which expresses the parties' agreement).

16

Response that she can supposedly seek this relief under the CFA. However, articulating an alleged basis for entitlement to injunctive relief and attorney's fees in her Response, as opposed to in her First Amended Complaint, is insufficient. Moreover, Plaintiff is, at a minimum, required to plead the relevant standards for obtaining such relief, which Plaintiff failed to do. For example, to obtain injunctive relief, Plaintiff must show that "she is likely to suffer <u>future</u> <u>injury</u> from defendant's threatened illegal conduct."[11] Similarly, since attorney's fees are a form of special damages, they must be specifically pled under Rule 9(g), Fed.R.Civ.P.[12] Plaintiff fails to specifically plead any alleged entitlement to injunctive relief or attorney's fees, and fails in her Response to provide any statutory or contractual basis for seeking this relief under her non-CFA claims. Plaintiff's requests for this relief must therefore all be stricken.

## CONCLUSION

For the reasons discussed herein, as well as those set forth in the School's Renewed Motion to Dismiss [D.E. 36], defendants Healthcare Technical, Bashir Mohammad, M.D., and Joy Crowley request that the First Amended Complaint be dismissed with prejudice in its entirety and the Second Amended Complaint be stricken.

Dated: August 16, 2013

---

[11] *See, e.g., Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990) (emphasis added).

[12] *See, e.g., Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.*, 474 F.2d 840, 843 (3d Cir. 1973), citing *Western Casualty & Surety Co. v. Southwestern Bell Tel. Co.*, 396 F.2d 351, 356 (8th Cir. 1968) ("Claims for attorney fees are items of special damage which must be specifically pleaded under Federal Rule of Civil Procedure 9(g)").

GACCIONE POMACO P.C.
524 Union Avenue
P.O. Box 96
Belleville, New Jersey 07109
Telephone: (973) 759-2807
Facsimile: (973) 759-6968
Attorneys for Defendants
Healthcare Training Institute, Inc.,
Bashir Mohammad, M.D., and Joy Crowley

By:     /s/ Joseph A. DeFuria
            JOSEPH A. DeFURIA (5124)

HOMER BONNER JACOBS
The Four Seasons Tower
1441 Brickell Avenue, Suite 1200
Miami, Florida  33131
Telephone:  (305) 350-5139
Telecopier:  (305) 372-1443
Attorneys for Defendants
Healthcare Training Institute, Inc.,
Bashir Mohammad, M.D., and Joy Crowley

By:     _(FOR)_
            PETER W. HOMER (*pro hac vice*)

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on August 16, 2013 a true and correct copy of the foregoing was sent via ECF and Lawyers Service upon Leslie A. Farber, Esq., Leslie L. Farber, LLC, 33 Plymouth Street, Suite 204, Montclair, New Jersey 07042; and via email and ECF upon Jeffrey J. Antonelli, Esq., Law Office of Jeffrey J. Antonelli, Ltd., 30 North LaSalle Street, Suite 3400, Chicago, Illinois 60602.

/s/ Joseph A. DeFuria
JOSEPH A. DeFURIA (5124)